STATE of Wisconsin, Plaintiff-Respondent,

v.

Terry THOMAS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 97–2665–CR. Oral argument December 3, 1999.—Decided February 18, 2000.*

2000 WI 13

(Also reported in 605 N.W.2d 836.)

For the defendant-appellant-petitioner there were briefs by *Jeffrey W. Jensen* and *Law Offices of Jeffrey W. Jensen*, Milwaukee, and oral argument by *Jeffrey W. Jensen*.

For the plaintiff-respondent the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. N. PATRICK CROOKS, J. Terry Thomas[1] seeks review of an unpublished court of appeals decision,[2] which affirmed a circuit court's denial of his motion to withdraw a guilty plea. The circuit court found that a factual basis supporting Thomas's plea had been established, and therefore denied the plea withdrawal request. The court of appeals affirmed, holding that Thomas had not demonstrated the "manifest injustice" required to withdraw his guilty plea. Slip op. at 10. We agree. A factual basis supporting the plea was established, because when the record is viewed under the totality of the circumstances, it is evident that Thomas assented to the facts as stated by the assistant district attorney. Since a proper factual basis was established, the guilty plea does not result in manifest injustice.

## I.

¶ 2. In the evening of October 10, 1995, Terry Thomas (Thomas) was involved in an altercation concerning drugs. A shoot-out ensued, and Tyrone Doss, a childhood friend, died. Ultimately, Thomas pled guilty to second-degree reckless homicide while using a dangerous weapon, as a party to a crime. Wis. Stat.

---

[1] Terry Thomas is also known as Terry Lovell Thomas, or Terry L. Thomas.

[2] *State v. Thomas*, unpublished slip op. (Ct. App. April 13, 1999).

§§ 940.06, 939.05, 939.63(1)(a)2 (1993–94).[3] The circuit court, the Honorable David A. Hansher presiding, convicted Thomas on his guilty plea, and he was sentenced to a fifteen-year prison term. After his conviction and sentencing, Thomas moved to withdraw his plea, claiming that a factual basis was not established to support it.

¶ 3. The facts leading to the guilty plea are as follows. According to Thomas's statement as set forth in the criminal complaint, he, Doss, and several other individuals met at Doss's house in Milwaukee to discuss a drug operation they were involved in. A scuffle broke out during the discussion, and Doss mumbled something about "going to war." (R. at 2:8.) Thomas and his friends then left and headed to Thomas's nearby residence.

¶ 4. A short time later, Thomas and his roommate "Shawn" walked back to Doss's house through an alley by the house. At that same time, Larry Harris, Zorris (Doss's brother), and their friend Rob, drove into the alley. Thomas was carrying an AK–47 semiautomatic rifle. Shawn carried a sawed-off, pistol-grip shotgun. When Harris got out of the car, he and Thomas were facing each other across the alley. Harris pulled a nine-millimeter handgun from the front of his waistband and pointed it at Thomas. Thomas then lifted his AK–47 and shot at Harris. Harris started running through yards, while Thomas continued to shoot in his direction. Thomas stated in the complaint that he shot at Harris to prevent Harris from shooting him.

¶ 5. The rifle, upon being fired, knocked Thomas to the ground. When he stood up, he began to walk to

_____

[3] All subsequent references to the Wisconsin Statutes are to the 1993–94 text unless otherwise noted.

his own residence, but saw Shawn standing in the alley firing his sawed-off shotgun toward Doss's house. Thomas turned back and started "shooting wildly" in the same direction from behind a bush. (R. at 2:8.) He claimed he could not see what he was shooting at, but kept firing to keep anyone from shooting back at Shawn or him. Doss, who was standing outside his house, was shot in the chest. He died a few hours later.

¶ 6. Thomas was charged with second degree reckless homicide while armed and habitual criminality, in violation of Wis. Stat. §§ 940.06, 939.63(1)(a)2, and 939.62. However, at the plea hearing the state amended the information orally to add "party to the crime" to the charge under Wis. Stat. § 939.05, and it dismissed the habitual criminality allegation.[4] Thomas pled guilty to the charge. The court then questioned Thomas directly. The following exchange occurred:

> THE COURT: The Court will accept the stipulation. Sir, you signed both guilty plea questionnaire, waiver of rights forms before for F–966162 [the homicide charge] and F–966044? These two pieces of paper I'm holding in front of you?
>
> THE DEFENDANT: Yes.[5]

[4] At the plea hearing, Thomas also entered a guilty plea to the charge of felon in possession of a firearm as a habitual criminal. That charge was in connection with a separate case, and is not the subject of this appeal.

[5] The guilty plea questionnaire explicitly states that Thomas

> [has] read (or [has] had read to [him]) the criminal complaint and the information in this case, and I understand what I am charged with, what the penalties are and why I have been charged. I also understand the elements of the offense and their relationship to the facts in this case and how the evidence establishes my guilt.

(R. at 20:8.) The court then inquired:

> THE COURT: Did you read both these criminal complaints and the informations in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Or was it read to you? Which one was it or both?
>
> THE DEFENDANT: Both.
>
> THE COURT: Both of them? So it was both read to you and you read it yourself so you understand what you're charged with now with the amendment, what the penalties are, why you've been charged and the elements of the offense of first degree or second degree reckless homicide while armed with a dangerous weapon, party to a crime, and felon in possession of a firearm, habitual criminality. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you also understand by pleading guilty you're giving up all possible defenses, including but not limited to self-defense, intoxication, insanity and alibi and your right to file motions by your attorney such as a motion challenging your — any statements you made, a motion to suppress the physical evidence, a motion to suppress your identification among various other motions. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand by pleading guilty to both charges you're giving up the following constitutional rights, your right to remain silent, your right to have your attorney cross-examine or ask questions of the State's witnesses, your right to

(R. at 6.)

have your own witnesses come to court to testify for you, your right to make the jury — your right to a court trial, meaning to me, or a jury trial, and a jury trial is where 12 people listen to the evidence and all 12 have to agree you're guilty in order to find you guilty and your right to make the State prove the case against you beyond a reasonable doubt as to each element of these two charges. Do you understand that?

THE DEFENDANT: Yes.

(R. at 20:9–11.) Later, the court questioned the defendant again:

THE COURT: Do you have any questions you want to ask me about the pleas to either one of these charges, any questions?

THE DEFENDANT: About the pleas?

THE COURT: Yes. Just the pleas. . . .

THE DEFENDANT: I understand what you're saying, that they can be ran concurrent, I mean, consecutive or concurrent.

THE COURT: But. . .do you have any questions regarding anything else we've discussed?

THE DEFENDANT: No.

(R. at 20:13.)

¶ 7. The state then listed the elements that it would have to prove against Thomas, and Thomas agreed he understood them. The assistant district attorney attempted to establish a factual basis for the plea by reading the factual allegations from the criminal complaint. The complaint consists of ten pages of statements from various witnesses. The court asked if there was some way to speed up the process. The state and the defense counsel proceeded to come to an under-

standing as to which parts of the criminal complaint they could stipulate to as a factual basis for the plea.[6] Finally, the court asked:

> THE COURT: So, you'll stipulate to [the above-stated facts] as a basis for the plea?
>
> MR. SCHNAKE (Defense Counsel): Yes.
>
> MR. MOLITOR (Assistant District Attorney): Just like something stated by the defendant he also agrees with those facts.
>
> THE COURT: Do you dispute anything that has just been said, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Yes. He stipulates. They both stipulate.
>
> MR. MOLITOR: Okay, and you read that complaint and you understood—
>
> THE COURT: I went through that with him.
>
> MR. MOLITOR: Okay. He said he read them. He didn't say he understood them.
>
> THE COURT: Of course he understood them. I asked if you read the complaints and that if he understood them. Are you willing to stipulate?
>
> MR. MOLITOR: Yes.

[6] During this discussion, the defense counsel disputed the following minor points: 1) whether there were two entry wounds from bullets on the victim's body; (R. at 20:25) 2) an explicative that Thomas allegedly stated to Larry Harris; (R. at 20:27) and 3) the statements of Angela Rollins, a witness who was at the scene of the crime. (R. at 20:28.) The discussion regarding disputed points immediately preceded the court's question to Thomas as to whether Thomas disputed anything. (R. at 20:25–29.)

THE COURT: Hallelujah. The Court will find there's a basis for the plea. Was there a preliminary hearing?

MR. SCHNAKE: There was a waiver hearing.

MR. MOLITOR: No.

THE COURT: Okay. The Court will find there's a basis for the plea. The Court will find the plea to be freely, voluntarily and intelligently made. I think I said that. I lost track here already.

MR. SCHNAKE: Yes. I believe it to be freely and intelligently waived. Mr. Thomas and I have met and discussed this, I believe, for an excess of six hours, specifically as to the plea.

(R. at 20:29–30.)

¶ 8. At the sentencing, the assistant district attorney wanted to clarify that Thomas agreed with the defense counsel's stipulation to the facts at the plea hearing.

MR. MOLITOR: . . .Mr. Thomas—Mr. Schnake correctly summarized the stipulation of facts that you agreed to last time in the guilty plea last time, is that correct?

THE DEFENDANT: Huh?

THE COURT: Are you talking to Mr. Schnake or the defendant?

MR. MOLITOR: I'm talking to the defendant.

THE COURT: Okay.

THE DEFENDANT: Yes.

(R. at 21:2–3.)

¶ 9. Thomas was sentenced to 15 years in prison for the reckless homicide charge. After the conviction, Thomas moved to withdraw his guilty plea as to that

charge. He argued that the plea must be withdrawn because a factual basis had not been established to support the plea, and that he had a meritorious defense. The circuit court denied the motion because it found Thomas did not demonstrate by clear and convincing evidence that manifest injustice would occur if he could not withdraw his plea. The plea would not result in manifest injustice, the court determined, because Thomas did not state what he specifically disputed during the plea hearing. As to the meritorious defense, the court found that Thomas's actions did not meet the criteria required to sustain a privilege of self-defense and defense of others, according to Wis. Stat. § 939.48. Finally, the court found that the guilty plea was entered intelligently.

¶ 10. Thomas appealed. The only issue on appeal was whether a factual basis to support the plea had been established. Thomas again argued that a manifest injustice would occur if his plea were not withdrawn because he disputed the factual basis for the plea. The court of appeals affirmed the circuit court's decision, holding that Thomas had not demonstrated the required "manifest injustice." Slip op. at 10. The court of appeals relied on *State v. Washington*, 176 Wis. 2d 205, 213, 500 N.W.2d 331 (Ct. App. 1993), which states that after a sentence has been imposed, a defendant seeking to withdraw a guilty plea must establish by clear and convincing evidence that the withdrawal will correct a "manifest injustice." Slip op. at 5.

¶ 11. The court of appeals held that Thomas had not shown by clear and convincing evidence that manifest injustice would result if his guilty plea were not withdrawn because a proper factual basis was established in support of the plea. Slip op. at 10. The court

723

stated that under Wisconsin law, a circuit court can accept a guilty plea even if a defendant does not agree to the proffered factual basis. Slip op. at 7 (citing *State v. Garcia*, 192 Wis. 2d 845, 532 N.W.2d 111 (1995)). Moreover, the court noted that Wis. Stat. § 971.08 is Wisconsin's counterpart to Fed. R. Crim. P. 11, which does not require a defendant to personally admit to the factual basis. Slip op. at 9 (citing *Garcia*, 192 Wis. 2d at 857–58).

¶ 12. Judge Charles Schudson dissented. The dissent argued that Thomas did not stipulate to the factual basis offered by the state at either the plea hearing, or at sentencing. Slip op. at 11 (Schudson, J., dissenting). In the dissent's opinion, Thomas's affirmative response to the circuit court's question, "[d]o you dispute anything that has just been said, sir?" demonstrates that Thomas did not agree to a factual basis. Slip op. at 12. Because the plea lacked a factual basis, the dissent concluded that a manifest injustice occurred when the motion to withdraw the plea was not granted. Slip op. at 15 (citing *State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996)).

## II.

¶ 13. In this case, we review the circuit court's denial of Thomas's motion to withdraw his guilty plea. A court's decision to allow withdrawal of a guilty plea is a matter of discretion, subject to the erroneous exercise of discretion standard on review.[7] *State ex rel. Warren*

---

[7] We also note that a court's decision to accept a guilty plea involves findings of fact. This court does not disturb a circuit court's factual findings, unless the findings are contrary to the great weight and clear preponderance of the evidence. *State v. Bagnall*, 61 Wis. 2d 297, 310, 212 N.W.2d 122 (1973) (applying the great weight and clear preponderance standard to a circuit

*v. Schwarz*, 219 Wis. 2d 615, 635, 579 N.W.2d 698 (1998) (citations omitted) (relating to the entry of an Alford plea).

¶ 14. For a circuit court to accept a guilty plea, there must be an affirmative showing or "allegation and evidence" that a plea is knowingly, voluntarily, and intelligently made. *State v. Bangert*, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 1969)). Wisconsin Stat. § 971.08(1)(b) sets forth an additional requirement that a circuit court must "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." This "factual basis" requirement is distinct from the above-stated "voluntariness" requirement for guilty pleas. *White v. State*, 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978). The factual basis requirement "protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). *See also Ernst v. State*, 43 Wis. 2d 661, 673, 170 N.W.2d 713 (1969), *overruled in part on other grounds by Bangert*, 131 Wis. 2d at 260.

¶ 15. When a defendant later seeks to withdraw a guilty plea, two standards apply, depending on when the defendant moves to withdraw. If a defendant moves

court's determination of the factual basis for a guilty plea). *See also* Wis. Stat. § 972.11(1) (applying Wis. Stat. § 805.17(2) to criminal proceedings). According to § 972.11(1), we may only overturn a circuit court's findings if the findings are clearly erroneous. The "clearly erroneous" and "great weight and clear preponderance" standards are interchangeable because they are essentially the same test. *See State v. Harris*, 206 Wis. 2d 243, 250 n.6, 557 N.W.2d 245 (1996).

to withdraw the plea before sentencing, a circuit court should permit the withdrawal for "any fair and just reason." *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). The defendant must prove that a fair and just reason exists by a preponderance of the evidence. *Id.* at 862.

¶ 16. If a defendant moves to withdraw the plea after sentencing, the defendant "carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.'" *Washington*, 176 Wis. 2d at 213. *See also Schwarz*, 219 Wis. 2d at 635. The higher standard of proof is used after sentencing, because once the guilty plea is finalized, the presumption of innocence no longer exists. *Id.* (quoting *State v. Walberg*, 109 Wis. 2d 96, 103, 325 N.W.2d 687 (1982)). "'Once the defendant waives his [or her] constitutional rights and enters a guilty plea, the state's interest in finality of convictions requires a high standard of proof to disturb that plea.'" *Id.* (quoting *Walberg*, 109 Wis. 2d at 103). The "manifest injustice" test requires a defendant to show "a serious flaw in the fundamental integrity of the plea." *State v. Nawrocke*, 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995) (citing *Libke v. State*, 60 Wis. 2d 121, 128, 208 N.W.2d 331, 335 (1973)).

¶ 17. When this court originally adopted the "manifest injustice test" in *State v. Reppin*, 35 Wis. 2d 377, 385–86, 151 N.W.2d 9 (1967), we looked to the American Bar Association's tentative draft of sec. 14–2.1, the plea withdrawal standard included in the ABA Standards for Criminal Justice. *Washington*, 176 Wis. 2d at 213. That provision set forth six examples of situations that might later result in "manifest injus-

tice" if a plea is not withdrawn. *Id.* (citing ABA Standards for Criminal Justice sec. 14–2.1(b)(ii)(A)–(F)). One of those situations is when a "defendant d[oes] not personally enter or ratify a plea." *Id.* at n.2. This court has also stated that it is one of a circuit court's duties to determine "[t]hat the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." *White*, 85 Wis. 2d at 488 (quoting *Ernst v. State*, 43 Wis. 2d 661, 170 N.W.2d 713 (1969)). Therefore, if a circuit court fails to establish a factual basis that the defendant admits constitutes the offense pleaded to, manifest injustice has occurred. *Id.* (citing *Morones v. State*, 61 Wis. 2d 544, 552, 231 N.W.2d 31 (1973)).

¶ 18. This case requires us to determine to what extent a defendant must admit the facts of a crime charged in order to accept the factual basis underlying a guilty plea. We hold that a defendant does not need to admit to the factual basis in his or her own words; the defense counsel's statements suffice. We also hold that a court may look at the totality of the circumstances when reviewing a defendant's motion to withdraw a guilty plea to determine whether a defendant has agreed to the factual basis underlying the guilty plea.[8] The totality of the circumstances includes the plea hearing record, the sentencing hearing record, as well

---

[8] We do not address Thomas's second argument that a circuit court "is not permitted to make 'findings of fact' which are contrary to the plain meaning of the words in the transcript." (Pet. Br. at 12.) Our holding that a court may look at the totality of the circumstances when reviewing a defendant's motion to withdraw a guilty plea subsumes this argument.

the defense counsel's statements concerning the factual basis presented by the state, among other portions of the record.

¶ 19. We find support in Rule 11(f) of the Federal Rules of Criminal Procedure for our conclusion that a defendant need not personally articulate his or her agreement with the factual basis presented. The factual basis requirement in Wisconsin is based on Rule 11(f).[9] *Bangert*, 131 Wis. 2d at 258. Rule 11(f) states: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed. R. Crim. P. 11(f). In *Boykin v. Alabama*, 395 U.S. 238, 241–42 (1969), the United States Supreme Court made Rule 11 applicable to state courts. This court adopted Rule 11(f) in *Ernst*, 43 Wis. 2d at 673–74. We stated that to comply with Rule 11(f), a judge must "personally determine 'that the conduct which the defendant admits constitutes the offense charged. . . .' " *Ernst v. State*, 43 Wis. 2d at 674 (quoting Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules, 18 USCA, p. 558).

¶ 20. It is significant that both the federal rule and the Wisconsin adaptation speak in terms of a *judge's* determination that a factual basis exists. Neither the rule nor the case law interpreting the rule requires a defendant to personally articulate the specific facts that constitute the elements of the crime charged. The federal courts have long held that a judge does not have to "engage in a colloquy with the defendant to establish a factual basis for a guilty plea." *United States v. Musa*, 946 F.2d 1297, 1302 (7th Cir. 1991). All that is required is for the factual basis to be

---

[9] Rule 11 governs the procedure for accepting pleas in the federal courts. Fed. R. Crim. P. 11.

developed on the record—several sources can supply the facts. *See Santobello v. New York*, 404 U.S. 257, 261 (1971); *United States v. King*, 604 F.2d 411, 414 (5th Cir. 1979) (holding that Rule 11(f) was not violated, even though the district court did not directly question the defendant as to the factual basis for the plea). *See also Davis v. United States*, 470 F.2d 1128, 1129 n.2 (3d Cir. 1972) (stating that "it is not necessary that the defendant personally be asked any questions" to establish the factual basis).

¶ 21. Nowhere in our case law interpreting Rule 11(f) do we require a judge to make a factual basis determination in one particular manner. In *Ernst*, this court stated that a judge must question a defendant to ascertain that " 'the defendant possesses an understanding of the law in relation to the facts.' " 43 Wis. 2d at 673 (quoting *McCarthy*, 394 U.S. at 466). That statement acknowledges that a judge must establish the factual basis on the record, but it does not dictate how a judge must do this. While a judge must ensure that a defendant realizes that his or her conduct does meet the elements of the crime charged, *see McCarthy*, 394 U.S. at 467, he or she may accomplish this goal through means other than requiring a defendant to articulate personally agreement with the factual basis presented. A factual basis may also be established through witnesses' testimony, or a prosecutor reading police reports or statements of evidence. *White*, 85 Wis. 2d at 490 (citations omitted). Finally, a factual basis is established when counsel stipulate on the record to facts in the criminal complaint.

¶ 22. Similarly, Wis. Stat. § 971.08(1)(b), Wisconsin's codification of Rule 11(f), does not specifically require a defendant to articulate personally the factual basis presented. Section 971.08 states that a court

must "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." The phrase, "such inquiry," indicates that a judge may establish the factual basis as he or she sees fit, as long as the judge guarantees that the defendant is aware of the elements of the crime, and the defendant's conduct meets those elements.

¶ 23. On a motion to withdraw, a court may look at the totality of the circumstances to determine whether a defendant has accepted the factual basis presented underlying the guilty plea. *White*, 85 Wis. 2d at 491 (stating that when a court undertakes a review for manifest injustice, it "may consider the whole record since the issue is no longer whether the guilty plea should have been accepted, but rather whether there was an abuse of discretion in the trial court's denial of the motion to withdraw.") Moreover, we have previously permitted a court reviewing the voluntariness requirement to make such an inquiry within the totality of the circumstances, and in particular, to review the record of the postconviction hearing. *Bangert*, 131 Wis. 2d at 251. It makes sense for a court to view the record in its totality when a judge's initial inquiry into the factual basis may be satisfied by multiple sources spanning the entirety of the record.

¶ 24. A review of the entire record may include a sentencing hearing record and a defense counsel's statements concerning the factual basis. *See id.* (permitting facts from the preliminary hearing and motion hearing to be evaluated in considering the motion to withdraw the guilty plea). We have also analyzed specific transcript statements in the context of the surrounding circumstances evident in the record. *See Wilson v. State*, 57 Wis. 2d 508, 510, 204 N.W.2d 508 (1973) (stating that a circuit court's pronouncement of

"guilty" constituted several findings under the circumstances preceding and after the pronouncement).

¶ 25. We turn now to the facts of this case. We conclude that the circuit court followed the proper procedure for accepting a guilty plea, and that a factual basis for the plea was established. At the plea hearing, Thomas agreed that he understood the elements of the crime charged. The state and the defense counsel then stipulated to the factual basis. The court asked the defense counsel if he would stipulate to the facts as the assistant district attorney read them from the complaint, and as the defense counsel and assistant district attorney had just discussed. The defense counsel responded, "[y]es."

¶ 26. The only confusion results from the court's question, "[d]o you dispute anything that has just been said, sir?" and Thomas's answer in the affirmative. However, viewing this question and response within the totality of the circumstances, Thomas's answer becomes clear. Just before the court asked Thomas if he disputed anything, both the defense counsel and assistant district attorney discussed what small points Thomas disputed from the record. None of those facts imputed the elements of the crime. The court could reasonably assume that the question and answer both reflected the defense counsel and assistant district attorney's recent discussion of these disputed points. Furthermore, at the sentencing hearing, Thomas clarified that he agreed with the stipulation of facts as stated at the plea hearing.

III.

¶ 27. We conclude, as the court of appeals did, that Thomas has not demonstrated the "manifest

injustice" required to withdraw his guilty plea. A factual basis supporting the plea was established, because when the record is viewed under the totality of the circumstances, it is evident that Thomas assented to the facts as his counsel stipulated to them. Since a proper factual basis was established, the guilty plea does not result in manifest injustice.

*By the Court.*—The decision of the court of appeals is affirmed.