State of Wisconsin, Plaintiff-Respondent,
v.
David Vigil, Defendant-Appellant.
Nos. 04-0896-CR, 04-0897-CR
Court of Appeals of Wisconsin.
Opinion Filed October 28, 2004.
¶1 HIGGINBOTHAM, J.[1]
David Vigil appeals from two separate judgments of conviction, the first for lewd and lascivious behavior, the second for one count of disorderly conduct and three counts of bail jumping, and for orders denying postconviction relief. Vigil argues that, as to the lewd and lascivious behavior conviction, he should be granted a new trial because the jury failed to reach a unanimous verdict. In addition, Vigil argues he should be allowed to withdraw his guilty plea to the disorderly conduct and bail jumping charges because there was an insufficient factual basis for those pleas. We disagree with both contentions and affirm all the judgments of conviction.

FACTS
¶2 These judgments of conviction arise from two separate incidents. On May 22, 2002, Karen Eiler was running an errand and walking her dog in downtown Madison. As she cut through an alley on University Avenue, she was confronted by a man who ran in front of her, cut her off and aggressively stopped her. She turned to avoid him only to find another man, Vigil, standing behind her.
¶3 While laughing, Vigil proceeded to unzip his pants and expose his partially erect penis to Eiler. Eiler unhooked her dog's leash, sending her dog home, and fashioned the leash into a whip, to defend herself against any further advances from Vigil. After exposing his penis for several seconds, Vigil put his penis back in his pants and continued to zip and unzip the zipper. Eiler ran out of the alley and went to a liquor store where the police were called. Eiler stated that these events made her feel very frightened and disturbed.
¶4 Vigil was still in the area when the police arrived. City of Madison police officer Susan Krause identified herself and approached Vigil. Krause noticed the smell of alcohol on Vigil's breath and it appeared that he had been drinking. Vigil first denied anything had happened in the alley; when further questioned about why his penis had been exposed, Vigil stated "I was pissing." Krause and another officer then accompanied Vigil into the alley to search for the alleged puddle of urine. In the end, the search did not reveal a puddle of urine or even a drop of moisture. Vigil could not show Krause where he had urinated and he had no explanation why no urine was found. Vigil was then arrested.
¶5 On May 23, 2002, Vigil was charged with lewd and lascivious behavior. During the pendency of this case, Vigil was allowed out on bail. A jury trial date was set for November 25, 2002; however, Vigil failed to appear that day and a warrant was issued. Vigil was ultimately taken into custody on February 22, 2003. Vigil was convicted of lewd and lascivious behavior after a jury trial on May 15, 2003.
¶6 On February 22, 2003, the police were called to a Verizon Wireless store on East Washington Avenue. While in the store, an apparently intoxicated Vigil approached a handicapped man attempting to buy a phone for one of his sons; Vigil stated, in a very loud and aggressive voice, "[y]ou better get those fucking kids out of here!" The store clerk reported that Vigil's threats produced such a panic in this family that the children physically picked up their father and rapidly carried him out of the store. The store clerk further reported that Vigil's temper continued to escalate; Vigil became even louder and more irate and several other customers were visibly upset and concerned. Vigil refused to leave the store, the police were called and he was arrested.
¶7 For these actions, on February 25, 2003, Vigil was charged with one count of disorderly conduct and three counts of bail jumping for (1) consuming alcoholic beverages, (2) committing a further crime and (3) failing to appear for a scheduled court date, all in violation of the bond conditions set in his lewd and lascivious case. On the day of jury selection, Vigil pled guilty to all charges.
¶8 Both cases were addressed at one sentencing hearing on June 4, 2003. The trial court sentenced Vigil to two years in prison for the lewd and lascivious behavior conviction. Vigil also received two-year sentences for each of the disorderly conduct and bail jumping charges, with one year to be served in confinement and another year devoted to extended supervision. All four sentences were concurrent to each other but consecutive to the two-year lewd and lascivious sentence. However, the trial court stayed the imposition of the disorderly conduct and bail jumping sentences and placed Vigil on three years' probation.
¶9 Vigil filed motions seeking postconviction relief on November 17, 2003, and, after a hearing, the motions were denied on March 8, 2004. Vigil appeals.

DISCUSSION

Lewd and Lascivious Behavior Conviction
¶10 Vigil argues that he should have been granted a new trial in this case because the jury failed to reach a unanimous verdict. Vigil specifically argues that the question posed by the jury during deliberations clearly indicates they were unable to reach unanimity. We disagree.
¶11 At Vigil's trial for lewd and lascivious behavior, the trial court received a question from the jury during deliberations: The jury asked for a "formal or legal definition of `indecent.'" Vigil concedes that both parties agreed that the trial court would not provide the jury with a definition but instead would instruct the jury to use their "common knowledge and experience" to determine what should be regarded as indecent.
¶12 At trial, Vigil, in essence, admitted exposing himself but argued that the exposure was neither lewd nor lascivious but merely "the efforts of a homeless man to relieve himself in a relatively private surrounding." Vigil now argues that the question posed by the jury asks whether there is a more restrictive definition of "indecent" and that without guidance, "it is impossible to tell whether some of the jurors believed that the simple urination by a homeless man is enough to support a criminal conviction."
¶13 First, Vigil agreed to the instruction that was provided to the jurors and the jurors used their own common knowledge and experience to find that Vigil's actions were, indeed, indecent. A defendant who fails to object to errors in a proposed jury instruction waives his right to raise the issue on appeal. State v. DeRango, 229 Wis. 2d 1, 34, 599 N.W.2d 27 (Ct. App. 1999).
¶14 Furthermore, Vigil's arguments are based solely upon pure speculation about what happened during jury deliberation. It is improper to guess the motivation behind the jury's question and the reasoning for the jury's verdict. A simple request for a definition of "indecent" does not inevitably lead to the conclusion that there was no jury unanimity.
¶15 In addition, to characterize the facts presented at trial as simply an "I must relieve myself" case, implying that Vigil was simply engaging in public urination while intoxicated, while both humorous and imaginative, is unsupported by the record. Eiler testified at trial that Vigil blocked her way, unzipped his pants, took his partially erect penis out of his pants and masturbated in front of her. When Eiler told Vigil to get away from her, he continued zipping and unzipping his pants, taunting her. As Eiler ran away, she saw out of her peripheral vision that Vigil, persistently laughing, continued to zip and unzip his pants. Krause testified that while Vigil crudely stated "I was pissing" as an explanation for his exposed penis, Vigil was unable to show Krause where he had urinated nor explain why no urine was found. There was more than sufficient evidence for the jury to conclude that Vigil's behavior was indecent.

Disorderly Conduct and Bail Jumping Convictions
¶16 Vigil next argues he should be allowed to withdraw his guilty pleas to three of the four charges, the disorderly conduct charge (Count 4) and two of the bail jumping charges, specifically the additional criminal offense (Count 2) and nonappearance (Count 3) charges, because there was an insufficient factual basis for those pleas. We disagree.
¶17 "The withdrawal of a guilty plea is not a `right,' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion." State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987). After sentencing, the defendant is required to show a "manifest injustice" to be entitled to plea withdrawal. Id. at 235. That showing must be by clear and convincing evidence and the burden of proof is on the defendant. See State v. Rock, 92 Wis. 2d 554, 559, 285 N.W.2d 739 (1979). "The `manifest injustice' test is rooted in concepts of constitutional dimension, requiring the showing of a serious flaw in the fundamental integrity of the plea." State v. Nawrocke, 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995).
¶18 Vigil has not demonstrated manifest injustice as he has failed to make the requisite showing of a serious flaw in the fundamental integrity of his pleas. The sole basis for Vigil's claim of error is that he did not sufficiently admit to the crimes, in his own words, for his guilty pleas to be accepted by the court. But as the State correctly notes, nothing in Wisconsin case law requires that the defendant personally articulate facts that constitute the elements of the crime. In fact, the trial court need not even engage in a colloquy with a defendant to establish a factual basis. State v. Thomas, 2000 WI 13, ¶ 20, 232 Wis. 2d 714, 605 N.W.2d 836. A trial court may rely solely on a criminal complaint to establish a factual basis. See State v. Black, 2001 WI 31, ¶¶ 11-12, 242 Wis. 2d 126, 624 N.W.2d 363.
¶19 Moreover, upon a motion to withdraw a plea, a court may look at the totality of the circumstances to determine whether a defendant has accepted the factual basis of the plea. This may include a review of the entire record, including the sentencing record as well as defense counsel's statements. Thomas, 232 Wis. 2d 714, ¶ 18. Here, Vigil was represented by counsel, who went over the plea questionnaire and waiver of rights form with him. Vigil signed this document, indicating he understood the elements of the offenses. His attorney also signed this document, indicating he believed Vigil was making his pleas freely, voluntarily and intelligently.
¶20 In pleading guilty to the bail jumping charge related to additional criminal offenses (Count 2), Vigil specifically admitted that he violated that condition of his bond. In addition, Vigil's attorney admitted that Vigil committed another new offense. In pleading guilty to the bail jumping charge related to his nonappearance for court, Vigil admitted he failed to appear for his jury trial, although he added he was unaware of the court date. However, Vigil had informed the court that he would receive court notices through Grace Episcopal Church and his court notices were sent to the address he provided. At sentencing, Vigil's attorney admitted Vigil "had no real good reason to miss that court appearance."
¶21 In pleading guilty to the disorderly conduct charge (Count 4), Vigil acknowledged that he created a disturbance because he "got in an argument." At his sentencing, Vigil's attorney stated "He admits it. He pled guilty to it. He was unruly.... He is saying I do know that I behaved in a way that is not appropriate."
¶22 The totality of the above circumstances indicates a more than sufficient factual basis for the pleas. Vigil has not demonstrated the manifest injustice necessary to withdraw his pleas.

CONCLUSION
¶23 Vigil is not entitled to a new trial on the lewd and lascivious conviction. Vigil agreed to the instruction provided to the jurors and the jurors used their own common knowledge and experience to find that Vigil's actions were indecent. Furthermore, Vigil's arguments are based solely upon pure speculation. Nor is Vigil entitled to withdraw his guilty pleas to the disorderly conduct and bail jumping charges as there was a sufficient factual basis for those pleas. Consequently, we affirm all the judgments of conviction and the orders denying postconviction relief.
By the Court.  Judgments and orders affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.