GUNDRUM, J.[1]
¶ 1 Noah Yang appeals from a judgment of conviction and the denial of his motion for postconviction relief. He asserts that there was not a sufficient factual basis for his plea to the charge of intimidation of a witness. We disagree and affirm.
Background
¶ 2 Yang was charged with felony physical abuse of a child for an incident occurring in April 2017. He ultimately pled to one count of intimidation of a witness and one count of disorderly conduct, both misdemeanors. After sentencing, he filed a postconviction motion to withdraw his plea on the ground that a factual basis was lacking for his plea to the intimidation of a witness count. The circuit court denied Yang's motion and Yang appeals.
Discussion
¶ 3 In seeking to withdraw his plea, Yang directs us to our supreme court's decision in State v. Thomas , 2000 WI 13, 232 Wis. 2d 714, 605 N.W.2d 836. Thomas , however, is not helpful to Yang.
¶ 4 We quote extensively from Thomas as relevant to this appeal:
A court's decision to allow withdrawal of a guilty plea is a matter of discretion, subject to the erroneous exercise of discretion standard on review.
[ WISCONSIN STAT. ] § 971.08(1)(b) [requires] that a circuit court must "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."
....
If a defendant moves to withdraw the plea after sentencing, the defendant "carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.' " The higher standard of proof is used after sentencing, because once the guilty plea is finalized, the presumption of innocence no longer exists. " 'Once the defendant waives his [or her] constitutional rights and enters a guilty plea, the state's interest in finality of convictions requires a high standard of proof to disturb that plea.' " The "manifest injustice" test requires a defendant to show "a serious flaw in the fundamental integrity of the plea."
....
[A] defendant does not need to admit to the factual basis in his or her own words; the defense counsel's statements suffice.... [A]lso[,] ... a court may look at the totality of the circumstances when reviewing a defendant's motion to withdraw a guilty plea to determine whether a defendant has agreed to the factual basis underlying the guilty plea. The totality of the circumstances includes the plea hearing record, the sentencing hearing record, as well as the defense counsel's statements concerning the factual basis presented by the state, among other portions of the record.
Thomas , 232 Wis. 2d 714, ¶¶ 13-18 (footnote omitted; citations omitted).
¶ 5 The Thomas court expressed that it was "significant" that a federal rule of criminal procedure related to WIS. STAT. § 971.08(1)(b), and Wisconsin's adaption of the rule in Ernst v. State , 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969),
speak in terms of a judge's determination that a factual basis exists. Neither the rule nor the case law interpreting the rule requires a defendant to personally articulate the specific facts that constitute the elements of the crime charged.... All that is required is for the factual basis to be developed on the record-several sources can supply the facts.
Thomas , 232 Wis. 2d 714, ¶ 20. The Thomas court noted that "[n]owhere in our case law ... do we require a judge to make a factual basis determination in one particular manner," adding that a judge "may establish the factual basis as he or she sees fit, as long as the judge guarantees that the defendant is aware of the elements of the crime, and the defendant's conduct meets those elements." Id ., ¶¶ 21-22.
¶ 6 At the beginning of the plea hearing in the case now before us, the prosecutor stated that "recorded phone calls out of the jail" showed that Yang "had contacted his mother on at least one occasion and indicated that if [Yang's daughter-a key witness in the child abuse case against Yang] was not present at court for a hearing, that the State would have to drop the charges." The prosecutor further stated that Yang's mother acknowledged in a phone call with Yang that she had been in contact with the mother of Yang's daughter. When the court later asked Yang's counsel if he had anything to say "regarding the burden here for the State or victim's rights," counsel responded, "No."
¶ 7 The circuit court showed Yang his signed plea questionnaire and waiver of rights form that had been presented to the court, and Yang acknowledged filling it out with his attorney. Included with the plea questionnaire was the jury instruction for the intimidation of a witness charge with the initials "NY" written near the top. Yang acknowledged that his attorney provided him with those elements. Counsel subsequently acknowledged receipt of the amended information, which contained the intimidation of a witness charge, and confirmed that he believed a factual basis existed for that charge. Yang pled no contest to the charge.
¶ 8 In the context of advocating for an appropriate sentence at Yang's sentencing hearing four days later, the prosecutor discussed his concern with Yang's "efforts ... to thwart justice," specifically referencing the jail phone calls made in the weeks before the previously scheduled trial, during which phone calls
[Yang] first had conversations with his mother indicating basically that if a witness didn't show up, the charges would have to be dropped. And then we find on September 16 [a week and a half before trial] another conversation, I believe, with [Yang] and the mom in which the mother indicated contact had been made with [the mother of Yang's daughter].
The prosecutor added that following those conversations "all of a sudden ... [Yang's daughter] is not brought to the courthouse" by her mother on the date of the scheduled trial. The prosecutor spoke of jurors giving up their time to come for trial "and then it is thwarted by the efforts to prevent people from being here. That in my mind is extremely serious." The prosecutor further asked the circuit court that Yang "be responsible for the costs and fees of having [the jurors] respond to doing their civic duty."
¶ 9 Yang's counsel then spoke, also in relation to a proper sentence for Yang, stating
there is no proof that [Yang] thwarted justice. I listened to the jail phone calls, and visits with his mother, ... they were not specific of [Yang's mother] saying you need to contact [the mother of Yang's daughter] or you need to contact [Yang's daughter] and tell her not to come to Court. There was none of that. There was just general comments that if [Yang's daughter] doesn't come to court, the District Attorney will drop the case. That's not intimidation of a witness, at least in my mind. It is not specific that you go do this so she doesn't come to court.
Yang's counsel then put forth an alternative reason why the mother of Yang's daughter may have decided not to bring Yang's daughter to court on the day of trial. Counsel added that Yang "was not in touch with [the mother of Yang's daughter] and I don't see how we make the stretch and get over the bridge that says Noah Yang thwarted justice by his comment to his mother .... I think that's a stretch." Yang's counsel expressed that one of the multiple reasons why Yang pled was because he "didn't want his mother or [the mother of his daughter] to be charged with intimidation of a witness," but recognized that that still "could happen." Counsel expressed his hope, however, that with Yang's entry of a plea, the district attorney would choose not to charge them. Counsel added: "I talked about the intimidation of the witness it was basically jail calls and meetings" between Yang and his mother. Given the opportunity to speak to the court moments later, Yang indicated he had nothing he wanted to say to the court.
¶ 10 In sentencing Yang, the circuit court expressed that the intimidation of a witness charge is "very serious." The court explained why Yang's daughter was such a key witness in the child abuse case against Yang, and then recapped that
we have calls where we have [Yang] and his mother talking about if the victim doesn't show up, the case will be dismissed. It wasn't, oh, my goodness, [my daughter] shouldn't have to testify, this would be terrible for her. I didn't hear mention of that at all. I didn't hear [Yang's mother, who was the grandmother of Yang's daughter] worried about [Yang's daughter] testifying, she was more concerned about the case being dismissed. In addition, we have the grandmother saying to [Yang], yes, I have called [the mother of Yang's daughter] and then right after that she didn't show up.
In addition, we have the mother [of Yang's daughter] giving many excuses for why they didn't show up. She didn't like a pretrial ruling, no money for gas. It's obvious the mother was reluctant to show up and was coming up with excuses such as not having gas money.... We have the defendant saying in calls if the witness doesn't show up, ... the case will be dismissed. Then we have ... [Yang's] mother saying, well, I called [the mother of Yang's daughter] and then all of a sudden, [Yang's daughter] didn't show up and her mother is making all kinds of excuses for not bringing [her]. It doesn't take more than just looking at the reasonable inferences or a reasonable person looking at this to see what happened here and it is not acceptable.
¶ 11 As Yang recognizes, the elements for WIS. STAT. § 940.42 intimidation of a witness, as relevant to this case, are that:
(1) Yang's daughter was a witness who was expected to be called to testify at Yang's trial;
(2) Yang prevented or dissuaded, or attempted to prevent or dissuade, his daughter from testifying at his trial; and
(3) He did so knowingly and maliciously.
See WIS. STAT. § 940.42 ; WIS JI-CRIMINAL 1292.
¶ 12 In exchange for dismissal of the Class H felony charge for physical abuse of a child initially filed against him, Yang pled to this misdemeanor intimidation of a witness charge (and misdemeanor disorderly conduct), giving up his right to have jurors decide his innocence or guilt beyond a reasonable doubt. Thus, we do not decide whether the State proved each element of the offense beyond a reasonable doubt. Rather, on appeal, we decide only whether Yang has proven that, based on the totality of the circumstances, the circuit court erred in concluding there was a sufficient factual basis for Yang's plea to the intimidation of a witness charge. If the circuit court so erred, "manifest injustice has occurred." See Thomas , 232 Wis. 2d 714, ¶ 17.
¶ 13 At sentencing, Yang's counsel clearly acknowledged that Yang communicated with his mother in the manner asserted by the prosecution, but emphasized that there was no direct contact between Yang and the mother of his daughter. As we have previously held, however, a defendant need not communicate directly with a subject witness in order to commit the intimidation of a witness offense to which Yang pled. See State v. Moore , 2006 WI App 61, ¶¶ 9-13, 292 Wis. 2d 101, 713 N.W.2d 131 (stating that where defendant Moore made no direct contact with witness Tamika but only sent letters to her mother, encouraging the mother to not have Tamika show up for trial, that "it is obvious that Moore attempted to dissuade Tamika through her mother").
¶ 14 Yang contends the record contains no facts indicating he "knowingly and maliciously" acted to prevent his daughter from testifying. But, as the circuit court noted, "[i]t doesn't take more than just looking at the reasonable inferences or a reasonable person looking at this to see what happened here." Yang has not shown that the court clearly erred with its implicit finding, based on the record, that Yang acted knowingly and maliciously when he communicated with his mother in an effort to ultimately prevent his daughter from showing up to testify at his trial. Whether a jury would have found this element met beyond a reasonable doubt will never be known, but, again, that is not the question before us. There was a sufficient factual basis for the court to find as it did.
¶ 15 Two of the three intimidation of a witness elements are satisfied where a defendant prevents or attempts to prevent a witness from testifying. The circuit court did not clearly err in finding that through his communications with his mother, Yang, at a minimum, prevented or attempted to prevent his daughter from testifying. Furthermore, as noted, the court did not clearly err in inferring that Yang did so knowingly and maliciously.
¶ 16 Yang has not carried his "heavy burden of establishing, by clear and convincing evidence, that the trial court should [have] permit[ted] [him] to withdraw the plea to correct a 'manifest injustice.' " See Thomas , 232 Wis. 2d 714, ¶ 16. He has not shown that the court erroneously exercised its discretion in declining his request to withdraw his plea. See id ., ¶ 13.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.