COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP962-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2013CF16

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BERNARD A. FISH, SR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Florence County: PATRICK J. MADDEN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bernard Fish, Sr., appeals from both a judgment of conviction for being a felon in possession of a firearm and the denial of his

postconviction motion. Fish claims he is entitled to plea withdrawal because the circuit court failed to establish a factual basis for his plea. He also argues the court did not make clear at the plea hearing the difference between a concurrent sentence and a consecutive sentence, and therefore his plea was not knowing, intelligent and voluntary. We reject Fish's arguments and affirm.

## BACKGROUND

¶2      This matter arose out of two drug robberies, one in Michigan and the other in Wisconsin. In Michigan, Fish and his nephew, Donovan Waupoose, robbed a known drug house, but they failed to obtain enough money or drugs to pay off a debt. Consequently, Fish asked Waupoose if he knew another drug dealer they could rob. Waupoose responded that J.C. worked for a medical marijuana supplier and had access to a large quantity of marijuana. Waupoose arranged a drug buy so that he and Fish could steal J.C.'s marijuana.

¶3      Waupoose dropped Fish off at a bar in Wisconsin where the parties had arranged to meet. Waupoose then left so he could meet Fish at an arranged location after the robbery. J.C. arrived at the bar with passengers in his vehicle, including young children. Fish approached the vehicle and asked for a light. J.C. turned to get a lighter, and Fish jumped into the back seat and held a gun to J.C.'s head. Fish then ordered J.C. to drive south. As they were driving, J.C.'s cellphone dropped out of his lap, and he reached down to pick it up. Fish told him, "I just killed 5 people in a bar and don't make me shoot you to prove a point." Fish demanded the cellphone and also took eighty dollars that J.C. had on his person. Fish then ordered J.C. to pull over, and Fish made everyone get out of the vehicle. Fish drove off with J.C.'s vehicle, and J.C. ran to a nearby bar and called 911. The stolen vehicle was recovered several miles south of the bar.

¶4     An amended criminal complaint charged Fish with two counts of armed robbery, armed carjacking, and possession of a firearm by a felon. At the preliminary hearing, the State elicited testimony that Fish used a gun during the robbery, and that Fish had a prior felony conviction in Wisconsin for a 1993 bank robbery. Fish eventually pleaded no contest to the felon in possession of a firearm count, and the remaining three counts were dismissed and read in. The circuit court imposed five years' initial confinement and five years' extended supervision, consecutive to the sentence imposed in the Michigan case resulting from the Michigan robbery.

¶5     Fish filed a postconviction motion, arguing he was entitled to plea withdrawal because: (1) the circuit court "never established a factual basis for the plea"; and (2) it was "unclear from the record that the defendant understood that the plea was for a consecutive jail term, not concurrent, and what that meant." Following an evidentiary hearing, the court denied the motion. The court stated it was "disingenuous for Mr. Fish to think that he did not know what was going on." The court further stated that Fish's "selective ignorance of one concept of law [did] not change the fact that he was fully informed of the consequences of his decision." Fish now appeals.

## DISCUSSION

¶6     A defendant moving for plea withdrawal after sentencing must prove by clear and convincing evidence that a refusal to allow plea withdrawal would result in manifest injustice. *State v. Brown*, 2006 WI 100, ¶¶23, 25, 293 Wis. 2d 594, 716 N.W.2d 906. Prior to accepting a guilty or no-contest plea, a circuit court does not have to engage in a colloquy with the defendant to establish a factual basis for the plea. *State v. Thomas*, 2000 WI 13, ¶20, 232 Wis. 2d 714,

605 N.W.2d 836. Before the court accepts the plea, however, it shall make an inquiry to satisfy it that the defendant in fact committed the crime charged. *Id.*, ¶22; *see also* WIS. STAT. § 971.08(1)(b) (2017-18).

¶7      Here, a factual basis for Fish's plea to being a felon in possession of a firearm was developed on the record, which was sufficient for the court to satisfy itself that Fish committed the crime to which he pleaded. *Thomas*, 232 Wis. 2d 714, ¶20. At the preliminary hearing, a police officer testified that he ran a criminal history check to determine whether Fish was a felon. During that check, the officer learned that Fish had a prior bank robbery conviction in Wisconsin. The officer testified that the 1993 bank robbery conviction was for a felony. Moreover, one of the passengers in J.C.'s vehicle testified at the preliminary hearing that Fish had possessed a gun, elaborating that Fish had pointed the gun at him and J.C. during the armed robbery.

¶8      Furthermore, there was a sufficient factual basis set forth at the plea hearing. The State represented that Fish had a gun. Fish's attorney stated at the plea hearing that Fish knew "he made a really dumb decision in this case" and that "he shouldn't have had the gun." Notably, Fish did not object to his trial counsel's statement, and during his allocution Fish did not deny having a gun. Fish also did not contest his status as a felon. The record establishes a sufficient factual basis to support Fish's plea to being a felon in possession of a firearm.

¶9      Fish also argues that the circuit court failed to clearly state the terms of the plea agreement on the record. In particular, Fish claims he was left confused about the difference between consecutive and concurrent sentences, and thus confused about his potential total sentence. The record reveals, however, that the terms of the plea agreement were thoroughly discussed at the hearing and that

the State clearly explained its recommendation for Fish's sentence structure. Indeed, Fish's statements themselves established that he knew exactly how his sentence would be structured when he entered his no-contest plea. Fish is therefore not entitled to relief on this claim.

¶10 The State began the plea hearing by immediately placing the correct terms of the plea agreement on the record. The State advised the circuit court that pursuant to the parties' agreement, Fish agreed to plead no contest to the felon in possession of a firearm count, and that the State would recommend dismissing and reading in the remaining three counts. The State also advised the court that it agreed to recommend a total sentence of ten years, consisting of five years' initial confinement followed by five years' extended supervision. The State specified that per the agreement, Fish's five-year term of initial confinement would run consecutive to the sentence he received in Michigan for the Michigan robbery. When the prosecutor finished, Fish's counsel confirmed the foregoing was a "correct recitation" of the terms of the agreement.

¶11 At one point in the plea hearing, the circuit court inadvertently stated that the plea agreement called for concurrent time, but the State immediately corrected the court and clarified that it was recommending a consecutive sentence. The court then confirmed with both Fish and his trial counsel that they understood the agreed-to sentence recommendation. Fish stated that he understood the recommendation, but he tried to bargain for probation:

> [Fish]: Yes. You know, I'll be 71, 72 years old when I get out, you know, and I don't think there's no need to give me any more time right here, because, I mean, both of these guys, they know what's wrong with their case and everything else like that. And me getting out [at] 71 and then coming back over here doing 5, I don't—I'm going to be all right by the time I get out of there. There's no reason to throw me in jail over here, too, you know. So I'm

5

asking, Your Honor, for probation. I'll take probation five years and still going to be the same thing. I mean, 71 is old.

¶12 The State confirmed that it was seeking "five years for what he did here in the State of Wisconsin, and that would be over and above what happens in Michigan." The circuit court concluded that the plea agreement was a "reasonable resolution of all [the] issues." The court imposed a sentence consisting of five years' initial confinement and five years' extended supervision, to run "consecutive to any sentence presently being served."

¶13 Fish's trial attorney's statements at the postconviction hearing also leave no doubt that Fish understood his agreed-to sentence structure. Trial counsel stated that he explained the concept of a consecutive sentence to Fish by telling him that "he would get out of Michigan at this age and then adding on the additional time and saying that's when he would get out of the Wisconsin prison." That is exactly how Fish described his understanding of the sentence structure at the plea hearing: "And me getting out [at] 71 and then coming back over here doing 5 …."

¶14 Based on Fish's own summary of his sentence structure at the plea hearing, the circuit court properly characterized Fish's postconviction claim as "disingenuous." The court concluded, "It's apparent to this Court that Mr. Fish is very knowledgeable, and that his selective ignorance of one concept of the law does not change the fact that he was fully informed of the consequences of his

decisions." We note that Fish does not appear to challenge the court's finding that he was "aware of the consequences."[1]

¶15    In sum, the record reveals that the terms of Fish's plea agreement were clearly stated on the record and that Fish understood those terms, including the recommended structure of his sentence. We therefore reject Fish's claims.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[1] In a single, short paragraph, Fish argues that he was confused because the circuit court never explained the difference between a consecutive sentence and a concurrent sentence. Fish provides no citation to legal authority that commands a circuit court to explain the difference. Regardless, the State is provided an opportunity to show that a plea was knowing, voluntary, and intelligent despite any purported defect in the plea colloquy. *See State v. Brown*, 2006 WI 100, ¶40, 293 Wis. 2d 594, 716 N.W.2d 906. Here, the record clearly establishes that Fish understood that his Wisconsin sentence would be served after his Michigan sentence.