# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP731-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| |       Plaintiff-Respondent, |
| |    v. |
| | Kevin L. Nash, |
| |       Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 144,930 N.W.2d 282
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | November 19, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 11, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Ralph M. Ramirez |

JUSTICES:

ZIEGLER, J., delivered the opinion for a unanimous Court.
REBECCA GRASSL BRADLEY, J., filed a concurring opinion.
KAROFSKY, J., filed a concurring opinion, in which ANN WALSH
BRADLEY and DALLET, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant, there were briefs filed by
*Jefren E. Olsen*, assistant state public defender. There was an
oral argument by *Jefren E. Olsen*.

For the plaintiff-respondent, there was a brief filed by *John
W. Kellis*, assistant attorney general; with whom on the brief was
*Joshua L. Kaul*, attorney general. There was an oral argument by
*John W. Kellis*.

**2020 WI 85**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP731-CR
(L.C. No. 2016CF148)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Kevin L. Nash,

    Defendant-Appellant.

**FILED**

**NOV 19, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

ZIEGLER, J., delivered the opinion for a unanimous Court. REBECCA GRASSL BRADLEY, J., filed a concurring opinion. KAROFSKY, J., filed a concurring opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Nash, No. 2018AP731-CR, unpublished slip op. (Wis. Ct. App. May 2, 2019), affirming the Waukesha County circuit court's[1] judgment and order

---

[1] The Honorable Ralph M. Ramirez presided.

denying Kevin L. Nash's postconviction motion to withdraw his Alford[2] plea. We affirm.

¶2 An Alford plea is "a guilty plea in which the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." State v. Garcia, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995). Nash was convicted of second-degree sexual assault of a child after entering an Alford plea. After sentencing, Nash sought to withdraw his Alford plea and argued that manifest injustice would result if he were not allowed to withdraw his plea because the circuit court failed to establish strong proof of guilt as to each element of the offense. He argues that the factual basis, upon which the circuit court relied, is insufficient to overcome his assertion of innocence. He requests that this court exercise its superintending authority and adopt specific procedures to satisfy the heightened standard under Alford.

¶3 Nash has not met his burden to prove by clear and convincing evidence that manifest injustice would result if he were not permitted to withdraw his plea. The record was sufficient for the circuit court to accept Nash's Alford plea. Nash, having had the benefit of reviewing discovery materials and charging documents with counsel, accepted the plea offer of the State. He acknowledged that he understood the elements of the offense and agreed that the State's evidence was sufficient to prove him guilty. Based on the facts alleged in the charging documents, the

---

[2] North Carolina v. Alford, 400 U.S. 25 (1970).

2

other acts evidence, the forensic interviews, the inculpatory statement and transcript of the inculpatory statement, statements by counsel for Nash and the State, and statements from Nash at the plea hearing admitting that the State could present evidence sufficient to convict him, the record demonstrates that there was a sufficient factual basis to support strong proof of Nash's guilt for each of the two elements of the offense. The circuit court specifically concluded that the State's offer of proof and the amended complaint provided a sufficient factual basis for Nash's Alford plea. The court of appeals concurred and held that the circuit court did not erroneously exercise its discretion in denying Nash's plea withdrawal motion. We agree.

¶4 We conclude that Nash has failed to establish by clear and convincing evidence that manifest injustice merits plea withdrawal, and that the factual basis in the record demonstrates strong proof of guilt to overcome the innocence maintained in Nash's Alford plea. Further, this court will not exercise its superintending authority to require that courts employ a specific procedure to establish a sufficient factual basis when accepting an Alford plea. Accordingly, we affirm.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5 The following facts are in the record we review. On October 6, 2015, police initiated an investigation into allegations that Nash sexually assaulted C.L.W. between November 2011 and November 2012, in Pewaukee, Wisconsin. The police

3

arranged for C.L.W. and her two sisters, A.T.N. and M.K.N., to be forensically interviewed.

¶6 On October 8, 2015, forensic interviews were conducted with the three victims. At the time of the interviews, C.L.W. was eight years old, A.T.N. was 12 years old, and M.K.N. was 15 years old. During the forensic interviews, each victim alleged that Nash engaged in forced sexual intercourse with each of them between November 2011 and November 2012. These alleged assaults occurred at their homes in Milwaukee and Pewaukee, as well as at a relative's house in Georgia. C.L.W. alleged that Nash exposed his penis to her and forced it into her mouth when she was only four or five years old. A.T.N. stated that Nash had forced sexual intercourse with her on an almost daily basis between November 2011 and November 2012, when she was only nine or ten years old. M.K.N. similarly alleged that Nash engaged in forced sexual intercourse with her. The forensic interviewer video-recorded each of the victims' forensic interviews and provided the recordings to the police.

¶7 On February 2, 2016, the State filed a criminal complaint charging Nash with two counts: Count 1, first-degree sexual assault of a child under age 12, alleged that "[Nash] between November 1, 2011 and November 1, 2012, [in Pewaukee], did have sexual intercourse with a child under the age of [12], [C.L.W.] . . . "; and Count 2, repeated sexual assault of a child, alleged that "[Nash], between November 1, 2011 and November 1, 2012, [in Pewaukee, Wisconsin], did commit repeated sexual assaults involving the same child, [A.T.N.], [] where at least

4

three of the assaults were violations of [Wis. Stat. §] 948.02(1)(am), (b) or (c) . . . ." The court found probable cause for the allegations based upon the narrative in the complaint and signed an arrest warrant for Nash. The complaint also specifically alleged that the State would seek to introduce other acts evidence and the victims' forensic interviews. The complaint, containing a factual narrative supporting the allegations, was attached to the arrest warrant.

¶8 On February 9, 2016, Nash was arrested in Georgia and subsequently extradited to Wisconsin. On February 23, 2016, Nash made his initial appearance in the Waukesha County circuit court.[3]

¶9 On March 28, 2016, Nash waived his right to a preliminary hearing, and the State filed an Information alleging the same two criminal counts and penalties stated in the amended complaint. Nash then entered a plea of not guilty to the charges contained in the Information.

¶10 On April 26, 2016, the State filed a notice of expert testimony, naming the forensic interviewer, and a notice of intent to use the three victims' video-recorded forensic statements. The State also filed a motion to admit other acts evidence and sought to introduce the victims' allegations of four prior sexual assaults Nash committed in order to show his motive and intent for the charged offenses. Describing what the victims alleged in their

---

[3] At the initial appearance, Nash noted an error in the penalty section of the criminal complaint; the State agreed to file an amended criminal complaint that corrected the penalty section. The State filed this amended complaint on March 3, 2016.

forensic interviews as a basis for admitting the other acts evidence, the State asserted the following:

> [C.L.W.] recalled an incident that occurred . . . in Milwaukee. She said that this incident occurred [in] the basement of that address. She remembers that [Nash] put his "privates" into her "privates." She said that [Nash] was on top of her while they were on the couch in the basement.
>
> [C.L.W.] remembers that [Nash's] "private" moved in and out of her. When this was over, [Nash] told her not to tell anyone about it.
>
> [A.T.N.] described an incident that occurred in Georgia . . . . She said that during that visit, she was in the garage with [Nash]. She said that she didn't want to be in the garage with him, as he [was] making her do things that she did not want to do. Specifically, [Nash] made her lie down and he "touched her private part with his private parts." He also put his hand over her mouth. While this was happening, [A.T.N.] remembers that [someone] walked in on this, and from that point on, [they] kept her and [Nash] separated.
>
> [I]n Milwaukee, [Nash] tried to put his "private parts" inside of [A.T.N.]. This happened in the [] basement. She remembers the isolation of that basement, and how completely that basement stifled all sound.
>
> Finally, [M.K.N.], during her forensic interview, spoke with very obvious trauma about incidents that she remembers [that occurred] in Milwaukee County. She remembers a first incident when [Nash] made her and [A.T.N.] take their clothes off. When this happened, she said that [Nash] would do "sexual things."

¶11 On June 29, 2016, the circuit court held a hearing on the State's motion to admit the prior sexual assaults in Georgia and Milwaukee as other acts evidence. During the hearing, the State recounted in detail the assaults that occurred in Georgia and in Milwaukee. Nash argued against the admission of the other acts evidence, but the circuit court agreed with the State. The

6

circuit court permitted the State, if a trial occurred, to bring in the prior alleged sexual assaults as evidence.

¶12  By letter dated August 2, 2016, the State notified the circuit court and Nash that it obtained a copy of a video-recorded statement Nash made on February 9, 2016, while in police custody in Georgia, in which he admitted to engaging in sexual contact with A.T.N. in Pewaukee.  The State gave notice that it intended to call the police officer who took the statement as a witness and to introduce Nash's statement if a trial occurred.

¶13  On August 17, 2016, the State filed its witness list. The witness list included all three victims, the forensic interviewer, and the police officer from Georgia.

¶14  On August 25, 2016, the day the parties were scheduled to meet for a pre-trial status conference, the parties notified the court that they had reached a plea agreement.  The State filed an amended information, amending the original charges of first-degree sexual assault of a child under age 12 and repeated sexual assault of a child to a single, lesser charge of second-degree sexual assault of a child under 16 years of age.  Specifically, the amended information stated that Nash "did have sexual intercourse with a child under the age of [16], [C.L.W.], . . . contrary to [Wis.  Stat.  §§]  948.02(2), 939.50(3)(c), 968.075(1)(a)."  In addition, the State agreed to "leave sentencing up to the court" with Nash "free to argue" for whatever sentence he thought was appropriate.  This amended charge carried with it a maximum penalty of 40 years in prison (25 years

confinement and 15 years extended supervision) and/or a $100,000 fine.

¶15 Nash filed his Plea Questionnaire/Waiver of Rights form indicating that he would plead no contest to the charge.[4] Nash's counsel explained that "[m]y client is not saying that he committed the offense outright and in a way it could be construed as an Alford plea, but that is the basis of the no-contest plea and we would like to resolve the case in that matter and that the State has no objection."[5]

¶16 The circuit court engaged in a plea colloquy with Nash to ascertain whether he was knowingly, intelligently, and voluntarily entering his plea. After the colloquy, the following exchange occurred:

> THE COURT: All right. Let's take a look at this offense. According to the amended information, it says between November 1st, 2011, and November 1st, 2012, [in Pewaukee], you did have sexual intercourse with a child under the age of sixteen, [C.L.W.], . . . contrary to

---

[4] Attached to the Plea Questionnaire/Waiver of Rights form is a page, which Nash separately initialed, stating the elements of second-degree sexual assault of a child under 16 years of age, as follows:

> 1. The defendant had (sexual contact) or (sexual intercourse) with a person.

> 2. The person was under the age of 16 years at the time of the (sexual contact) or (sexual intercourse).

[5] When quoting the record, we will refer to Nash's plea as the circuit court did——a no contest plea. Despite how the circuit court record referred to the plea, Nash entered an Alford plea to the amended charge, and this plea is what we review here today. Accordingly, we will refer to his plea as an Alford plea unless we are quoting from the record.

8

section 948.02(2) of the Wisconsin Statutes, a class C felony. Upon conviction, you could be fined up to $100,000.00 or imprisoned for not more than forty years or both . . . .

Is that going to remain intact, [State]?

[THE STATE]: Yes, sir.

THE COURT: All right. What is your plea to that charge, sir? Mr. Nash, what is your plea to that charge?

[NASH]: No-contest.

THE COURT: All right. [State], give me a factual basis, an offer of proof please . . . ?

[THE STATE]: Yes, Judge. Last fall I believe the [victims], who are here in court, made outcries to the Village of Pewaukee Police Department, that between the dates roughly of November 1st, 2011, and November 1st, 2012, when the four of them and their mother and stepfather lived [in Pewaukee], that the defendant had engaged in sexual intercourse with two of the three [victims].

All three [victims] were under the age of sixteen at the time. In fact, even though we have just alleged one act of sexual assault, sexual intercourse of a child under the age of sixteen, and that is [C.L.W.], there were multiple acts of sexual intercourse, penis to vagina, at that address all in Waukesha County, State of Wisconsin, sir.

THE COURT: Do you understand that's what the State would intend to prove if this matter went to trial, Mr. Nash?

[NASH]: Yeah, I do.

¶17 The court then questioned Nash about his plea, which led to some confusion as to the specific type of plea Nash was entering:

THE COURT: All right. Understanding that that's what the State says that they could prove, is it your

9

intent to continue your plea of no-contest to this charge?

    [NASH]: Yep. But I mean – yeah, I understand. I understand.

    [DEFENSE COUNSEL]: Say yes if you do.

    THE COURT: All right. Do you acknowledge that the State has enough evidence to prove this charge?

    [NASH]: No.

    THE COURT: Do you believe that you are not guilty of these charges?

    [NASH]: Yes, I do.

    [DEFENSE COUNSEL]: That was in essence the no-contest Alford part.

To alleviate this confusion, the court asked defense counsel to explain how he "talked about the plea [], the factual basis, and the State's obligation to meet its burden of proof with [Nash]." Defense counsel responded as follows:

In the last week we have had three meetings at the jail. We went over that if the case proceeded to trial, the State would produce largely the three [victims] as witnesses. Perhaps the individuals from the care center that did the interviews. Officers. And that we --

I relayed to him that the [victims], if they testified as to what was in the discovery materials, were going to say that he had sexual contact with them and/or sexual intercourse. And I went over with him what a no-contest plea meant as far as the standard no-contest plea. Where you say you are not challenging it. You are saying that the State could produce this evidence and that it is believed a jury would convict him.

He denied to me that he actually committed the offense but he wanted to accept the plea bargain because the original charges were carrying 120 years of exposure and the State was willing to reduce this to one charge and that they also reduced their sentence recommendation

10

to basically leaving it up to the Court. We went over this on three separate occasions and he indicated to me that he understood what that meant. And that at the time of sentencing, I would make a recommendation and see what happened and he understood that.

Nash confirmed that this is what his counsel relayed to him. The court then engaged in the following exchange with Nash:

THE COURT: Okay. So, to me that means that you wish to take advantage of the State's plea offer. The amended charge to reduce the possible time you could be incarcerated, locked up, and that you are not acknowledging that it happened but that there is enough evidence that the State could prove that.

Is that true?

[NASH]: No, sir. Really not. Everything in this case . . . . It's basically a hearsay case, sir. And, I mean, but at the same time I don't want to keep hearing the he said she said stuff . . . . I'm offering to keep staying in Waukesha for something I didn't do, that's why I plead no-contest because I'm not, you know, I'm not saying I did it at all. I'm not going to say I did something that I didn't do, sir, at all.

. . . That's why I was going to take it to trial and now I'm not, I'm not going to take it to trial because I see I will lose . . . . So, that's why I was not trying to fight it at all. That's why I signed the plea deal.

THE COURT: All right. So, just so we are clear on everything here, if you say to me, Judge, I'm not saying I did this but I want to enter this plea of no-contest acknowledging that the jury could convict me, you want to take advantage of the State's offer, I can accept this plea. But if you say, you know what, Judge, I didn't do this. Somebody is forcing me to do this. I don't want to do this, then I have concerns.

What do you want me to do, sir?

[NASH]: . . . I got several concerns, sir, about this case . . . . I mean, some of that, this is really messed up and I want to take it to trial but I really

11

don't because . . . [i]t's all this hearsay. I feel like everybody is looking at me the wrong way. Oh, he did it. I believe he did it. Yeah, he did this. He did that. Sir, I'm telling you right now I never did none of this and I don't want to keep going through it.

THE COURT: All right. Okay. The case is set for trial next week. And I feel like I'm pulling teeth here and it's not my intent to do that. If Mr. Nash wishes to enter a plea of no-contest of an Alford type taking advantage of the State's offer but indicating that he is not guilty of the offense, I don't have a clear indication from Mr. Nash that that's exactly what he wants to do and there is a great deal of difficulty here.

So, I guess what I'm going to do at this point is, I will leave the matter on the trial calendar and I will return the documents to the parties. The plea questionnaire and waiver of rights form and the amended information. And if there is a change or problem or concern, you gentlemen know where to find me and if I need to recall the case, I will.

Accordingly, the circuit court did not accept nor enter Nash's Alford plea at this hearing.

¶18 The next day, on August 26, after Nash's counsel met with him to discuss entering into a plea agreement with the State, the court held another plea hearing. At this second plea hearing, Nash filed the same Plea Questionnaire/Waiver of Rights form he filed the day before, in which he indicated that he was pleading no contest, waived his constitutional rights, and acknowledged that the court could impose a maximum penalty of 40 years in prison (25 years confinement and 15 years extended supervision) and/or a $100,000 fine. The State refiled the Amended Information, amending the original charges of first-degree sexual assault of a child under age 12 and repeated sexual assault of a child to a single, lesser charge of second-degree sexual assault of a child under 16

12

years of age, contrary to Wis. Stat. §§ 948.02(2), 939.50(3)(c), and 968.075(1)(a).  The Plea Questionnaire/Waiver of Rights form contained the same no contest plea to the single charge in the Amended Information, second-degree sexual assault of a child under 16 years of age.  After a discussion about the timing of sentencing, the court began a colloquy with Nash as to the amended charge:

> THE COURT:  . . . My understanding from [defense counsel] is that your position is you are not admitting that you did these things.  That you believe you wish to take advantage of the State's plea offer and recommendation and the amended charge.  That you believe, based on your review of the evidence, that the State has evidence that could result in your conviction.
>
> Is that correct, sir?
>
> [NASH]:  Yes, sir.
>
> . . .
>
> THE COURT:  All right.  Now, do you understand the charge to which you are pleading?  In other words, did [defense counsel] review with you the elements of the offense that the State would have to prove before you could be found guilty?
>
> [NASH]:  Yes, sir.

After the court reviewed with Nash the specific constitutional rights he was waiving, the following exchange occurred:

> THE COURT:  The charge against you in the amended information indicates as follows: Between November 1st, 2011, and November [1st], 2012, [in Pewaukee], you did have sexual intercourse with a child under the age of sixteen, [C.L.W.], . . . and this was contrary to section 948.02(2) of the Wisconsin Statutes . . . .  This is a class C felony punishable by up to $100,000.00 fine or up to forty years of imprisonment or both.

13

What is your plea to this charge?

[NASH]:  Um, no-contest.

. . .

THE COURT:  Okay. Now, yesterday [the State] made an offer of proof; correct []?

[STATE]:  Yes, sir.

THE COURT:  And you heard what [the State] said yesterday.  Do you remember that?

[NASH]:  Yes, sir.

THE COURT:  Okay.  Have you reviewed the complaint with your attorney and all the police reports?

[NASH]:  Yes, sir.

THE COURT:  And [the State] stand[s] by that offer of proof, []?

[STATE]:  Yes, sir.

THE COURT:  And you offer the complaint and the amended complaint originally filed in this action as a factual basis?

[STATE]:  I do.

THE COURT: Do you have any objection to that, [defense counsel]?

[DEFENSE COUNSEL]:  No, Judge, not at all.  I have reviewed that with my client fully.

THE COURT:  All right.  So you've entered a plea of no-contest which means you are not challenging the charge against you in the amended information and you understand that I will find you guilty if I accept your plea?

[NASH]:  Yes, sir.

THE COURT:  All right.  What I have been told and I want to reiterate this, it is your position you didn't do these things, however, you believe that the State has

14

a sufficient amount of proof or information such that we could have a jury trial and they could meet their burden of proof. You could be found guilty at a jury trial of the two charges on the original document, the information, but you wish to take advantage of this amended information and enter your no-contest. Is that true?

[NASH]: Yes, sir.

THE COURT: [Defense counsel], again please tell me, did you review the issues related to a so-called Alford plea with your client?

[DEFENSE COUNSEL]: In depth.

THE COURT: All right. Is that true, Mr. Nash?

[NASH]: Yes, sir.

THE COURT: Do you understand what it is when we say an Alford plea? It's a person's name but it's a plea that means I'm going to plead guilty or no-contest, I'm going to accept responsibility for the charge, I'm not necessarily admitting that those facts occurred but I understand that the State has got enough evidence where I could be found guilty at trial? Is that what is going on here?

[NASH]: Yes, sir.

¶19 After a colloquy with Nash about the implications of entering a plea to a serious sexual offense,[6] the court made the following findings:

I will find, taking into consideration the proceedings yesterday and the proceedings and the information that has been set out on the record, the statements made by counsel, the documents I have received, the plea questionnaire and waiver of rights form, the factual

---

[6] These consequences include the inability to vote in any election until his civil rights are restored, the inability to own or possess a firearm, the inability to engage or participate in a position that requires interacting primarily and directly with children under the age of 16, and registering as a sex offender.

basis of the offer of proof that was set out on the record yesterday as well, that I'm convinced at this time, given Mr. Nash's responses to the questions that I have posed, that he has freely, voluntarily, knowingly, and intelligently waived his rights and entered his plea.

I will find a sufficient factual basis based on the contents of the complaint and the offer of proof. I will find Mr. Nash, based on his no-contest, guilty of the charge set out in the amended information filed as of today's date.

After finding Nash guilty, the court ordered a presentence investigation.

¶20 On October 24, 2016, the court sentenced Nash to eight years of imprisonment, consisting of three years of initial confinement and five years of extended supervision. The court then stayed that sentence and placed Nash on probation for a period of five years. As a condition of probation, the court ordered Nash to spend one year in jail, with 258 days of credit for time served.

¶21 On January 26, 2018, 15 months after being sentenced, Nash filed a postconviction motion seeking to withdraw his Alford plea.[7] Nash argued that the circuit court neglected to find that the record contained "strong evidence of actual guilt."

---

[7] Nash also moved to remove a domestic abuse modifier that was erroneously included in the judgment of conviction. Agreeing it was erroneously included, the circuit court removed the modifier. Although Nash argued that including this domestic abuse modifier constituted a manifest injustice, the circuit court disagreed. Nash did not appeal the circuit court's determination that including the domestic abuse modifier did not constitute a manifest injustice.

16

¶22  On April 6, 2018, the circuit court held a hearing on Nash's postconviction motion.[8]  The parties agreed that it was Nash's burden to present a prima facie case that there was manifest injustice.  Nash asserted that the circuit court failed to establish a sufficient factual basis to support his Alford plea, constituting a manifest injustice.  He contended that a mere summarization of the facts in the complaint is insufficient to support an Alford plea.  Moreover, he asserted, this is a case in which strong proof of guilt will be difficult to show because it rests solely on testimonial evidence from three children.

¶23  In response to Nash's allegations, the State argued that the circuit court was "extremely careful" when it accepted Nash's plea.  The State recounted the August 25 and 26 plea hearings.  It restated the offer of proof:

> Last fall I believe the [victims], who are here in court, made outcries to the Village of Pewaukee Police Department between the dates . . . roughly of November 1st, 2011, and November 1st, 2012, [in Pewaukee], that the defendant had engaged in sexual intercourse with two of the three [victims]. All three [victims] were under the age of sixteen at the time.
>
> In fact, . . . even though we have just alleged one act of sexual assault, sexual intercourse of a child under the age of sixteen, and that is [C.L.W.], there were multiple acts of sexual intercourse, penis to vagina, at that address all in Waukesha County, State of Wisconsin, sir.

The State also reiterated the specific wording the court used when finding a factual basis:

---

[8] The State did not file a written response to Nash's postconviction motion.

17

> I will find, taking into consideration the proceedings yesterday and proceedings [and] the information that has been set out on the record, the statements made by counsel, the documents I have received, the plea questionnaire and waiver of rights form, the factual basis of the offer of proof that was set out on the record yesterday as well, that I'm convinced at this time, given Mr. Nash's responses to the questions that I have posed, that he has freely, voluntarily, knowingly, and intelligently waived his rights and entered his plea. I will find a sufficient factual basis based on the contents of the complaint and the offer of proof.

The State argued that the criminal complaint was sufficient to show strong proof of Nash's guilt. The State contended that the criminal complaint "talks about sexual intercourse with [C.L.W.]. Describes that. Describes where it occurred in the basement. Describes about how it occurred. It describes the address. It describes multiple victims." The State asserted that it had "absolutely and positively satisfied this Alford requirement of strong [proof] of guilt . . . ." Accordingly, the State asked the court to deny Nash's claim of manifest injustice.

¶24 The court asked defense counsel about what it must say when accepting an Alford plea: "[D]o I have to say the magic words? Do I have to say those words, strong proof?" Defense counsel agreed that the court need not use any magic words when accepting an Alford plea, but, instead, asserted that it must be clear on the record that the parties were all operating on the heightened standard. Nash argued that without physical evidence or witnesses other than the victims, the record will likely not reflect a strong proof of guilt.

18

¶25 At the conclusion of the postconviction hearing, the circuit court concluded that Nash had not demonstrated manifest injustice meriting withdrawal of his plea. Concluding that there was a strong proof of guilt on the record, the court stated:

> Again, we are looking at the nature of this offense and it was made clear on the record before I accepted the plea of what the allegations were, who was involved, and what was done.
>
> We didn't just say, there was some sort of facts. There was something sexual going on or some sort of touching. We are not able to be definite about it. It was stated on the record that there was sexual intercourse and the nature, the specific nature of the sexual intercourse. The people involved. The ages. The location. Using as well the information set out in the complaint.
>
> In addition to that, I think that this record demonstrates that there was strong proof of actual guilt. That this Court did consider all the things that were brought to its attention at the time of the plea colloquy. . . .
>
> So, I'm going to find that the defense has not met that prima facie showing. For the reasons set out on the record, I will deny the motion . . . .

On April 16, 2018, Nash filed a Notice of Appeal. On May 2, 2019, the court of appeals affirmed the circuit court. Nash, No. 2018AP731-CR, ¶28.

¶26 On December 10, 2019, Nash petitioned this court for review. We granted the petition.

## II. STANDARD OF REVIEW

¶27 Nash asks this court to review the circuit court's denial of his postconviction motion to withdraw his Alford plea. The decision to permit a plea withdrawal is a matter of the circuit

court's discretion, which we review under an erroneous exercise of discretion standard. State v. Cain, 2012 WI 68, ¶20, 342 Wis. 2d 1, 816 N.W.2d 177 (citing State v. Thomas, 2000 WI 13, ¶13, 232 Wis. 2d 714, 605 N.W.2d 836). "We do not disturb a circuit court's findings of fact, except in situations where those findings are contrary to the great weight and clear preponderance of the evidence." Id. Moreover, "we must ensure that the circuit court's determination was made upon the facts of record and in reliance on the appropriate and applicable law." State ex rel. Warren v. Schwarz, 219 Wis. 2d 615, 635, 579 N.W.2d 698 (1998).

¶28 In reviewing the circuit court's decision to accept a plea in a post-sentencing withdrawal appeal, we are not limited to what the circuit court stated it relied upon in determining its factual basis——we may rely upon the entire record in our review. Cain, 342 Wis. 2d 1, ¶29. A defendant can withdraw a plea after sentencing only if "the withdrawal is necessary to correct a manifest injustice." Id., ¶24. "[W]hen applying the manifest injustice test, it is our role not to determine whether the circuit court should have accepted the plea in the first instance, but rather to determine whether the defendant should be permitted to withdraw the plea." Id., ¶30 (footnote omitted). Therefore, when reviewing a circuit court's denial of a post-sentencing plea withdrawal, we will not overturn the circuit court's determination of a sufficient factual basis unless it is clearly erroneous. Warren, 219 Wis. 2d at 645.

¶29 As for Nash's proposal that we exercise our superintending authority, we alone are tasked with that

responsibility.  Wis. Const. art. VII, § 3; see, e.g., Koschkee v. Evers, 2018 WI 82, 382 Wis. 2d 666, 913 N.W.2d 878.

### III.  ANALYSIS

¶30  Because Nash seeks to withdraw his plea, we begin with a general discussion of plea withdrawal.  More specifically, because Nash seeks to withdraw an Alford plea, we next provide background information on Alford pleas.  Subsequently, we determine whether the record supports the circuit court's finding of Nash's strong proof of guilt.  Finally, we address Nash's request that we exercise our superintending authority to create certain evidentiary requirements for a court to accept an Alford plea.

### A.  Plea Withdrawal Generally

¶31  Depending on when a defendant seeks to withdraw his plea, two different standards apply.  If a defendant seeks to withdraw his plea prior to sentencing, "a circuit court should 'freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution [would] be substantially prejudiced.'"  Cain, 342 Wis. 2d 1, ¶24 (quoting State v. Jenkins, 2007 WI 96, ¶2, 303 Wis. 2d 157, 736 N.W.2d 24) (alteration in original).  "The defendant must prove that a fair and just reason exists by a preponderance of the evidence."  Thomas, 232 Wis. 2d 714, ¶15.

¶32  On the other hand, as is the case here, when a defendant seeks to withdraw a plea after sentencing, the defendant must show that allowing the withdrawal of the plea "is necessary to correct

21

a manifest injustice."  State v. Smith, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996).  The defendant "carries the heavy burden of establishing, by clear and convincing evidence" that refusing to allow plea withdrawal would result in manifest justice.  Thomas, 232 Wis. 2d 714, ¶16.  "The higher standard of proof is used after sentencing, because once the guilty plea is finalized, the presumption of innocence no longer exists."  Id.  "Historically, one type of manifest injustice is the failure of the trial court to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads."  Smith, 202 Wis. 2d at 25.  Therefore, a circuit court must determine that a sufficient factual basis exists for each element of the crime based on the entire record.  If it does not, a manifest justice occurs.

### B.  Alford Pleas Generally

#### 1.  Alford pleas

¶33  An Alford plea is a conditional guilty plea, which allows the defendant to maintain his or her innocence outright, but nonetheless accept a conviction and sentence for the crime.  The United States Supreme Court found this type of plea to be constitutionally acceptable.  North Carolina v. Alford, 400 U.S. 25, 37 (1970).  In 1995, this court recognized for the first time "that the circuit courts of Wisconsin may, in their discretion, accept Alford pleas."  Garcia, 192 Wis. 2d at 856.[9]  In that case, we described an Alford plea as "a guilty plea in which the

---

[9] The court of appeals had previously recognized Alford pleas over a decade before this court. See State v. Johnson, 105 Wis. 2d 657, 314 N.W.2d 897 (Ct. App. 1981).

defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." Id.

¶34 An Alford plea shares characteristics of both a guilty plea and a no contest plea, but it is nonetheless different. Unlike a no contest plea or a guilty plea, a defendant who enters an Alford plea maintains his or her innocence but nonetheless chooses to enter an Alford plea knowing the court will enter a judgment of conviction. Like a guilty plea, an Alford plea "places the defendant in the same position as though he had been found guilty by a verdict of a jury." Warren, 219 Wis. 2d at 631. Unlike a guilty plea, an Alford plea does not constitute an express admission that the defendant committed the act charged. Wis. JI—Criminal SM-32A at 2 (2019). An Alford plea is similar to a no contest plea in that "both lack an express admission of guilt" and neither constitutes an admission for collateral purposes in civil cases. Id. at 2, 7-8. Despite this commonality, "[t]he key distinction between [Alford and no contest pleas] is that '[a]n Alford plea goes beyond a no contest plea in the sense that the former involves an outright claim of innocence while the latter involves something less than an express admission of guilt.'" Warren, 219 Wis. 2d at 631 n.9 (quoting Wis. JI—Criminal SM-32A at 1 (1995)).

### 2. Accepting an Alford plea.

¶35 Before accepting a guilty, no contest, or Alford plea, a circuit court must be satisfied that certain requirements are

23

met. Wis. Stat. § 971.08(1) (2017-18).[10] To accept an Alford plea, "the circuit court must determine that the summary of the evidence the [S]tate would offer at trial constitutes 'strong proof of guilt.'" Warren, 219 Wis. 2d at 645 (citing Garcia, 192 Wis. 2d at 859-60). "'Strong proof of guilt' is not the equivalent of proof beyond a reasonable doubt, but it is 'clearly greater than what is needed to meet the factual basis requirement under a guilty plea.'" Warren, 219 Wis. 2d at 645 (quoting Smith, 202 Wis. 2d at 27). For a traditional guilty plea, the record must reflect "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Ernst v. State, 43 Wis. 2d 661, 673, 170 N.W.2d 713 (1969), overruled in part on other grounds, State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). However, because a defendant who wishes to enter an Alford plea outright claims innocence, the record must reflect a "strong proof of guilt" to overcome the defendant's protestations of innocence. See Garcia, 192 Wis. 2d at 859-60 (citing State v. Johnson, 105 Wis. 2d 657, 663, 314 N.W.2d 897 (Ct. App. 1981)). We require that the record reflect a strong proof of guilt not to convince the defendant of his or her guilt; rather, it is constitutionally required to ensure that the defendant is knowingly, intelligently, and voluntarily entering a plea that

---

[10] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

will result in a judgment of conviction, despite the defendant's claims of innocence. See id. at 857.

¶36 In determining whether it can accept an Alford plea, the circuit court must examine the record to determine whether a "sufficient factual basis was established at the plea proceeding to substantially negate [the] defendant's claim of innocence." Warren, 219 Wis. 2d at 645 (quoting Johnson, 105 Wis. 2d at 664) (alteration in original). Because an Alford plea often results from agreed-upon plea negotiations between a defendant and the State, a court "need not go to the same length to determine whether the facts would sustain the charge as it would [where] there is no negotiated plea." Warren, 219 Wis. 2d at 645-46 (quoting Smith, 202 Wis. 2d at 25). Because of this, the circuit court does not need to use any "magic words" when it accepts an Alford plea. Instead, the court must be satisfied that the facts in the record, as a whole, are sufficient to provide strong proof of guilt and overcome a defendant's protestations of innocence. See Thomas, 232 Wis. 2d 714, ¶20 ("All that is required is for the factual basis to be developed on the record——several sources can supply the facts."); Garcia, 192 Wis. 2d at 859-60 (concluding "an adequate record of the 'strong proof of guilt'" is sufficient); Johnson, 105 Wis. 2d at 664 (stating "[t]he record in this case" was sufficient); Alford, 400 U.S. at 37 ("[T]he record before the judge contains strong evidence of actual guilt.").

¶37 When determining whether the record contains facts sufficient to accept a defendant's Alford plea, the circuit court must find strong proof of guilt for each element of the alleged

25

crime. See Smith, 202 Wis. 2d at 26 ("If there is no evidence as to one of the elements of the crime, the defendant's Alford plea cannot be accepted and the factual basis requirement cannot be met."). Accordingly, to accept an Alford plea, the circuit court looks at the record as a whole and determines whether the facts in the record show a strong proof of guilt as to each element of the alleged crime.

¶38 However, what constitutes an adequate record in a particular case is specific to the facts and circumstances of that case, and such determinations are left to the discretion of the circuit court. For example, in Warren, this court held that the victim's testimony and a police officer's testimony from a preliminary hearing constituted strong proof of guilt. 219 Wis. 2d at 646-47 (specifically, the victim testified in detail to the events of a particular sexual assault and the interviewing officer testified that the victim told her in detail about the sexual assault). In Johnson, the State's recital of evidence was deemed a sufficient factual basis for the circuit court to conclude the record contained strong proof of guilt. 105 Wis. 2d at 665 ("The prosecutor's recital of the evidence in this case indicates that the [S]tate could prove all of the elements of the crimes charged . . . ."). In State v. Annina, the court of appeals held that a criminal complaint combined with a prosecutor reading a portion of the police report was a sufficient factual basis. 2006 WI App 202, ¶¶16-17, 296 Wis. 2d 599, 723 N.W.2d 708. "A factual basis may also be established through witnesses' testimony, or a

26

prosecutor reading police reports or statements of evidence." Thomas, 232 Wis. 2d 714, ¶21.[11]

¶39 As we stated previously, "a judge must establish the factual basis on the record, but [we do] not dictate how a judge must do this." Id. We reaffirm that principle.[12]

### C. The Factual Basis Supports a Showing of Strong Proof of Guilt.

¶40 Nash has not established manifest injustice because his Alford plea was supported by a strong factual basis. In reviewing the entire record, it is clear that the circuit court properly determined that a sufficient factual basis existed for both elements of Nash's crime, second-degree sexual assault of a child under 16 years of age.

¶41 Nash is specifically charged with sexually assaulting C.L.W., and the record clearly establishes a sufficient factual basis to overcome his protestations of innocence. This offense has two elements: (1) that Nash had sexual intercourse or contact with a person, and (2) that person was under the age of 16 years at the time of that intercourse or contact. See Wis. Stat.

---

[11] We recognize the importance of Wis. JI—Criminal SM-32A and recommend that circuit courts review it when determining whether to accept a defendant's Alford plea.

[12] Other jurisdictions follow this rule. See, e.g., State v. Scroggins, 2018-1943 (La. 6/26/19); 276 So. 3d 131 (per curiam); State v. Stilling, 856 P.2d 666 (Utah Ct. App. 1993); Johnston v. State, 829 P.2d 1179, 1182 (Wyo. 1992); Amerson v. State, 812 P.2d 301, 303 (Idaho Ct. App. 1991); Tiger v. State, 654 P.2d 1031, 1033 (Nev. 1982); and Scarborough v. State, 363 S.W.3d 401 (Mo. Ct. App. 2012).

§ 948.02(2). The record demonstrates strong evidence to support each element of the crime.

¶42 During the plea hearings, Nash admitted verbally and in writing that he understood the nature and elements of the offense. The criminal complaint and amended criminal complaint outlined the detailed victim accounts of the forced sexual intercourse and contact. The record also contains significant other acts evidence that the court deemed admissible at a prior hearing. The court heard the prosecutor describe the victim's forensic interviews, the facts of the charges at issue, and the details regarding other uncharged sexual assaults in other jurisdictions. The court heard of the witnesses who would testify about the assaults, and the court also had, as other acts evidence, a statement Nash made to law enforcement admitting to sexually assaulting A.T.N. In addition, the prosecutor provided a summary explaining how Nash engaged in multiple acts of sexual intercourse with the victims, all of whom were under age 16. The record reflects that the State would call the three victims and also the forensic examiner to testify against Nash. Nash's counsel acknowledged the State's witnesses. In sum, the record contains ample evidence to support "strong proof of guilt," and Nash has failed to meet his burden to prove by clear and convincing evidence that his plea resulted in manifest injustice.

¶43 More specifically, the record supports the circuit court's finding that Nash committed both elements of the offense: (1) sexual contact or intercourse (2) with a person under 16 years of age. As to the first element, the record reflects that Nash

28

engaged in sexual contact or intercourse with C.L.W. The police began an investigation into Nash because C.L.W. told a school counselor that Nash "touched [her] in a way [she] did not want. He touched [her] private parts and put his private part in [hers]." During her forensic interview, C.L.W. stated that Nash exposed his penis to her and forced it into her mouth. The amended complaint reiterated what C.L.W. disclosed during her forensic interview. The State, as an offer of proof, stated that Nash engaged in "multiple acts of sexual intercourse, penis to vagina" with C.L.W. Such statements in the record establish that the circuit court did not err when it determined that Nash engaged in sexual contact or intercourse with C.L.W.

¶44 As to the second element of Nash's crime——the age of the victim——it is clear that C.L.W. was under the age of 16 at the time of the sexual assaults. In fact, C.L.W. was only four or five years old at the time of the assaults. This fact is clearly established in the amended complaint which provides C.L.W.'s date of birth. Accordingly, the record clearly supports the element that C.L.W. be under the age of 16.

¶45 Therefore, our review of the record demonstrates that it contains strong proof of guilt as to each element of the crime to support Nash's Alford plea. Accordingly, we conclude that Nash failed to demonstrate manifest injustice, and the circuit court did not erroneously exercise its discretion when it denied Nash's motion to withdraw his Alford plea.

D. Superintending Authority

29

¶46 Article VII, Section 3(1), of the Wisconsin Constitution states, "[t]he supreme court shall have superintending and administrative authority over all courts." That section "endows this court with a power that is indefinite in character, unsupplied with means and instrumentalities, and limited only by the necessities of justice." Arneson v. Jezwinski, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996). "'The superintending authority is as broad and as flexible as necessary to insure the due administration of justice in the courts of this state.'" Id. at 226 (quoting In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975)). Although this court has the power to act, it must be mindful when it exercises that power. See id. ("[W]e do not use [our superintending authority] lightly.").

¶47 Nash proposes that this court exercise its superintending authority, under Article VII, Section 3(1) of the Wisconsin Constitution, to impose certain evidentiary standards for establishing a sufficient factual basis for an Alford plea. He argues that we should require live testimony, oral statements of relevant witnesses, or other documentary evidence. We decline to exercise our superintending authority to adopt such a requirement.

¶48 The procedural safeguards and "strong proof of guilt" requirement in Alford pleas adequately address the need for a sufficient factual basis. Circuit courts are required to establish a sufficient factual basis to support a plea whether the plea is guilty, no contest, or Alford. See Wis. Stat. § 971.08(1).

30

Requiring a specific evidentiary presentation is unnecessary to afford the protection due.

¶49  "'This court will not exercise its superintending power where there is another adequate remedy, by appeal or otherwise, for the conduct of the trial court . . . .'"  Arneson, 206 Wis. 2d at 226 (quoting McEwen v. Pierce Cnty., 90 Wis. 2d 256, 269-70, 279 N.W.2d 469 (1979)).  Nash had several other "adequate remedies."  He could have raised his specific concerns with the factual basis before or at sentencing.  See State v. Spears, 147 Wis. 2d 429, 436, 433 N.W.2d 595 (raising concerns to one specific element of the crime to which defendant pled).  He could have tested the State's proof and proceeded to trial.  Cf. U.S. Const. amend VI (right to a jury trial); Wis. Const. art. 1, § 5 (same). If Nash believed that the circuit court should have heard more evidence to establish a strong proof of guilt, he had several options to remedy his concerns.  Instead, from the record, not only is strong evidence demonstrated but Nash himself acknowledged as much at the plea hearings. Therefore, we will not exercise our superintending authority to create a specific evidentiary requirement as Nash requests.

## IV.  CONCLUSION

¶50  We conclude that Nash has failed to establish by clear and convincing evidence that manifest injustice merits plea withdrawal, and that the factual basis in the record demonstrates strong proof of guilt to overcome the innocence maintained in Nash's Alford plea.  Further, this court will not exercise its

superintending authority to require that courts employ a specific procedure to establish a sufficient factual basis when accepting an Alford plea. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

¶51 REBECCA GRASSL BRADLEY, J. *(concurring).* I join the majority opinion in full. I write separately to point out the pitfalls of plea bargaining——particularly when Alford pleas are part of the deal. The justice system tolerates such pleas only in tension with constitutional commands governing criminal prosecutions. Given the incongruity of accepting a guilty plea from a defendant who maintains his innocence, judges must approach Alford pleas with caution and deliberation.

¶52 The right to a trial by jury in criminal cases is a fundamental bedrock of the Constitution. As Thomas Jefferson explained, a trial by jury is the "only anchor, ever yet imagined by man, by which government can be held to the principles of its constitution." Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), in 15 The Papers of Thomas Jefferson 269 (Julian P. Boyd ed., 1958). Indeed, this precept is integral to preventing prosecutorial overreach and protecting the liberty of innocent defendants. "A criminal trial is in part a search for truth. But it is also a system designed to protect 'freedom' by insuring that no one is criminally punished unless the State has first succeeded in the admittedly difficult task of convincing a jury that the defendant is guilty." Williams v. Florida, 399 U.S. 78, 113-14 (1970) (Black, J., concurring in part and dissenting in part). Mindful of this purpose, our founders understood the right to a jury trial as the "heart and lungs" of liberty. See Letter from John Adams to William Pym (Jan. 27, 1766), in 1 Papers of John Adams 169 (Robert J. Taylor et al. eds., 1977).

1

¶53 In a dangerous departure from an original understanding of the constitutional design for criminal prosecutions, trial by jury has become the exception rather than the rule. Without a doubt, "criminal justice today is for the most part a system of pleas, not a system of trials." Lafler v. Cooper, 566 U.S. 156, 170 (2012). In recent years, approximately 97 percent of federal convictions and 94 percent of state convictions have been resolved through a guilty plea. Missouri v. Frye, 566 U.S. 134, 143 (2012) (citing statistics from the United States Department of Justice). Many courts are often eager to accept them. Indeed, plea agreements serve a practical role in the judicial system. For both attorneys and judges alike, plea agreements facilitate the prompt resolution of cases and prevent the criminal justice system from becoming overwhelmed. See Lucian E. Dervan, Bargained Justice: Plea-Bargaining's Innocence Problem and the Brady Safety-Valve, 2012 Utah L. Rev. 51, 59-60 (2012).

¶54 As the United States Supreme Court has recognized, plea agreements also allow criminal defendants who know they are guilty to admit to their crimes in exchange for more favorable terms at sentencing. See Frye, 566 U.S. at 144. In this sense, plea agreements can benefit "both parties." Id. With respect to a defendant who actually committed the crime for which he was charged, pleading guilty serves the State's interest in expediency and the people's interest in swift justice, in addition to

2

sometimes sparing victims from the trauma of reliving the crimes against them during trials.[1]

¶55 Recognizing the benefits of plea bargaining in appropriate cases, however, does not negate the harm caused by its exploitative use, when the "bargain" coerces a defendant into admitting guilt in response to a prosecutor's threat to add charges carrying lengthy sentences.[2] The Constitution does not countenance this coercive type of plea bargaining, which not only allows the guilty to escape justice but also permits the extortion of the innocent. See Ralph Adam Fine, Escape of the Guilty & Extortion of the Innocent (2d ed. 2013). "Plea bargaining rests on the constitutional fiction that our government does not retaliate against individuals who wish to exercise their right to trial by jury." Timothy Lynch, The Case Against Plea Bargaining, Regulation, Fall 2003, at 24, 26. Extortive plea bargaining encourages the guilty to hold out for reduced charges and a lighter sentence while coercing the innocent to plead guilty in fear of

---

[1] When the defendant's guilt is certain, plea bargaining may be favored in "situations where the facts of a particular case may justify a lenient sentence, a dismissal, or reduction," and "consideration to a defendant may be warranted, in appropriate cases, to get his or her help in catching or convicting a 'bigger fish' or to avoid the trauma of a trial for a . . . victim." Ralph Adam Fine, Plea Bargaining: An Unnecessary Evil, 70 Marq. Law Rev. 615, 616 (1987). These scenarios promote "justice for society and for the victim." Id.

[2] Nothing in the record in this case suggests any coercion on the part of the prosecutor. Indeed, this case was particularly appropriate for a plea agreement, in light of the strong proof of Nash's guilt, and for purposes of sparing three young children the trauma of a trial during which they would have had to testify regarding the sexual assaults they suffered.

increased charges and a harsher sentence. For the sake of expediency, this tool of the justice system appallingly results in the incarceration of the innocent. For the sake of conserving the limited resources of the justice system, plea bargaining allows the guilty to be released earlier than the law contemplates, at society's expense should the guilty re-offend. See, e.g., Lafler, 566 U.S. at 186-87 (Scalia, J., dissenting) (citing Albert W. Alschuler, Plea Bargaining and Its History, 79 Colum. L. Rev. 1, 38 (1979)) (Without plea bargaining, "our system of criminal justice would grind to a halt.").

¶56 The United States Supreme Court, as well as this court,[3] have concluded that plea bargaining is permitted as a "necessary evil." Lafler, 566 U.S. at 187 (Scalia, J., dissenting). "[W]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Bordenkircher v. Hayes, 434 U.S. 357, 361–62 (1978) (emphasis added) (quoting Blackledge v. Allison, 431 U.S. 63, 71 (1977)).

¶57 In the decades following Bordenkircher, proper administration of plea bargains has faded as judges sometimes reflexively accept pleas without ferreting out the extortion by which the State sometimes elicits them. "A finely tuned criminal justice system will punish the guilty and leave the innocent unmolested." Ralph Adam Fine, Plea Bargaining: An Unnecessary

---

[3] State ex rel. White v. Gray, 57 Wis. 2d 17, 21-22, 203 N.W.2d 638 (1973); Armstrong v. State, 55 Wis. 2d 282, 286-88, 198 N.W.2d 357 (1972).

_Evil_, 70 Marq. Law Rev. 615, 626 (1987). Every decision by an innocent defendant to forego his constitutional right to a jury trial in response to the State's coercive tactics imperils liberty. Every plea bargain enabling the guilty to evade legally prescribed punishment erodes the integrity of the criminal justice system.

¶58 Perhaps most fundamentally, "plea bargaining is . . . at war with our most precious tradition: the presumption of innocence." Ralph Adam Fine, _Echoes of a Muted Trumpet_, 4 Engage 39, 40 (2003).[4] Although in this case the circuit court conducted an exhaustive colloquy with the defendant and initially declined to accept Nash's _Alford_ plea based upon Nash's protestations of innocence, sometimes absent from the process is any real inquiry into whether or not the defendant actually committed the crime. In this case, the record belies Nash's declarations of innocence. As the majority opinion details, "the factual basis in the record demonstrates strong proof of guilt to overcome the innocence maintained in Nash's _Alford_ plea." Majority op., ¶¶4, 50. Troublingly, in other cases "innocent defendants do plead guilty more often than most people think and certainly more often than anyone cares to admit." John H. Blume & Rebecca K. Helm, _The Unexonerated: Factually Innocent Defendants Who Plead Guilty_, 100

---

[4] _Echoes of a Muted Trumpet_ can be accessed at https://fedsoc-cms-public.s3.amazonaws.com/update/pdf/PcJMmPtH2g 0Seh2zqsDpiSa8zy5D3CIBLiPB1f2Q.pdf.

Cornell L. Rev. 157, 158 (2014).[5] Plea bargaining "presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense; and for guilty defendants it often——perhaps usually——results in a sentence well below what the law prescribes for the actual crime." Lafler, 566 U.S. at 185 (Scalia, J., dissenting).

¶59 While defendants ostensibly retain the ultimate "choice" of proceeding to trial, that option becomes illusory when individual liberties are held hostage by expediency. Plea bargaining empowers prosecutors to effectively penalize defendants, via heightening charges or recommending enhanced sentencing, for not accepting plea bargains. See Bordenkircher, 434 U.S. at 372. If the right to a jury trial is the "anchor" and "heart and lungs" of American liberty, a justice system that incentivizes defendants to waive this fundamental right cannot be reconciled with the Constitution's conception for the adjudication of guilt or innocence. "[F]or what greater security can any person have in his life, liberty or estate, than to be sure of not being divested of, or injured in any of these, without the

---

[5] See also Ralph Adam Fine, Echoes of a Muted Trumpet, 4 Engage 39, 41 (2003) ("During my nine years as a trial judge, I had several defendants who wanted to plead guilty even though when I then asked them to tell me what they did, responded with stories of innocence. When I asked them why they were trying to plead guilty, they all told me that they had been threatened with harsher penalties if they insisted on going to trial. In rejecting their pleas, I told them that we had enough guilty persons to convict, and that we did not need to dip into the pool of the innocent. In each of the instances, we went to trial and the defendants were acquitted.").

sense and verdict of twelve honest and impartial men of his neighborhood?" Norval v. Rice, 2 Wis. 22, 27 (1853).

¶60 Alford pleas exemplify the gravest dangers of plea bargaining. An Alford plea allows a defendant to both plead guilty and profess innocence. See North Carolina v. Alford, 400 U.S. 25 (1970). This impossibility is as perplexing as the paradox of Schrödinger's cat.[6] "One would think that if a defendant says he did not commit the crime, the criminal justice system would insist on a trial to resolve the question." Blume & Helm, supra, at 172. Instead, our criminal justice system uses Alford pleas to "grease the system's wheels with the oil of expediency." Ralph Adam Fine, Echoes of a Muted Trumpet, 4 Engage 39, 40 (2003). Accepting them "exacerbate[s] the risk of truly innocent defendants pleading guilty." Blume & Helm, supra, at 172. Consequently, "the trial courts in this state" should "act with great reticence when confronted with an Alford plea." See State ex rel. Warren v. Schwarz, 219 Wis. 2d 15, ¶21 n.8, 579 N.W.2d 698 (1998) (quoted source omitted). Not surprisingly, some jurists have been quite "troubled that a defendant may plead guilty to a charge while continuing to protest his innocence thereto." State v. Garcia, 192 Wis. 2d 845, 868, 532 N.W.2d 111 (1995) (Wilcox, J., concurring). If "[t]he dual aim of our criminal justice system is 'that guilt shall not escape or innocence suffer[,]'" id. (quoting

---

[6] https://whatis.techtarget.com/definition/Schrodingers-cat (explaining Nobel Prize-winning Austrian physicist Erwin Schrödinger's thought experiment presenting the paradox of a cat being both dead and alive at the same time, as a critique of a particular interpretation of quantum mechanics).

7

<u>United States v. Nobles</u>, 422 U.S. 225, 230 (1975)), "[a]n <u>Alford</u> plea, in my mind, contradicts this very simple proposition[.]" <u>Id.</u>

¶61 Because the right to a jury trial ensures that the government is "held to the principles of its constitution," courts must proceed with caution when allowing defendants to waive this right entirely. "The Framers of the Constitution were aware of less time-consuming trial procedures when they wrote the Bill of Rights, but chose not to adopt them. The Framers believed the Bill of Rights, and the freedom it secured, was well worth any costs that resulted. If that vision is to endure, the Supreme Court must come to its defense." Lynch, <u>supra</u>, at 27 (advocating for the abolition of plea bargaining). Judicial acceptance of plea bargaining distorts the constitutional design for criminal prosecutions. "The Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in 'efficiency' that resulted. Their decision constitutes the final word on the subject, absent some constitutional amendment." <u>Williams</u>, 399 U.S. at 113-14 (Black, J., concurring in part; dissenting in part).

¶62 So long as plea bargains remain an entrenched and accepted mechanism for resolving criminal cases, judges should be wary of accepting them. A plea entered solely in response to threats of added charges or harsher sentences should be rejected. Prosecutors should not be allowed to "up the ante" in order to discourage a defendant's exercise of his constitutional right to a jury trial. Nor should guilty defendants be permitted to benefit

from a "bargain" that allows them to escape responsibility and punishment for crimes actually committed——unless the benefits to society outweigh the costs.[7] "If we want defendants to respect the law, we must enforce it with justice and honesty." Ralph Adam Fine, Plea Bargaining: An Unnecessary Evil, 70 Marq. Law Rev. 615, 621 (1987). Plea bargaining for the sake of expediency "vitiates public confidence in the criminal justice system." Id. It also disregards victims' rights, "sending the message to them and to society that some crimes simply do not count." See id. at 616-18 n.7.[8]

¶63 Nearly 150 years ago, this court condemned some plea bargaining as a "direct sale of justice." Wight v. Rindskopf, 43 Wis. 344, 354 (1877). Our predecessors recognized that the prosecutor's job is to "distinguish between the guilty and the innocent, between the certainly and the doubtfully guilty" and to "never voluntarily [] acquiesce in an acquittal upon certain presumption of guilt, or in conviction upon doubtful presumption of guilt." Id. (emphasis added). Prevailing plea bargaining practices, including the Alford plea, extend legally incognizable leniency to the guilty while criminalizing the innocent. "The bottom line is that any system of justice must ensure fairness. Sadly, for too many people, our criminal-justice system is not

---

[7] See Ralph Adam Fine, Plea Bargaining: An Unnecessary Evil, 70 Marq. Law Rev. 615, 616 (1987).

[8] Quoting Ralph Adam Fine in State v. Smith, No. 94-2894-CR, unpublished slip op., *2 n.4 (Wis. Ct. App. 1995), rev'd on other grounds, 202 Wis. 2d 21, 549 N.W.2d 232 (1996).

fair." See Ralph Adam Fine, Escape of the Guilty & Extortion of the Innocent (2d ed. 2013).

¶64 In many cases, plea bargaining effectively replaces the constitutional construct for adjudicating criminal guilt or innocence and supplants legislatively-prescribed punishment, all without the people's consent. Alford pleas present the greatest risk of convicting innocent defendants while allowing guilty defendants to repudiate responsibility for their crimes. This constitutionally-suspect contrivance puts justice "on sale" while unacceptably depriving the innocent of any justice whatsoever.

¶65 In this case, I endorse the court's conclusion that "the record demonstrates strong proof of guilt to overcome the innocence maintained in Nash's Alford plea." Majority op., ¶¶4, 50. I therefore join the majority opinion, which reflects the current state of the law. I write separately to reiterate the fundamental flaws of plea bargaining in general, which is inherently inimical to the search for truth that should be paramount in any system of justice. I respectfully concur.

¶66 JILL J. KAROFSKY, J. (concurring). I join the majority opinion in full. I write separately to discourage the acceptance of Alford pleas in Wisconsin circuit courts. I fully recognize that in certain cases, especially those involving child sexual assault victims, an Alford plea may be the only avenue by which victims are spared from testifying and offenders are still held accountable. This is why I do not believe an absolute ban to the Alford plea practice is warranted. However, the acceptance of Alford pleas is troubling because a system allowing defendants to accept punishment without admitting guilt may rob victims of needed closure and may prevent defendants from being rehabilitated.

¶67 When the courts permit a defendant who is actually guilty to avoid taking responsibility, a victim may not fully obtain closure. See, e.g., Claire L. Molesworth, Knowledge Versus Acknowledgement: Rethinking the Alford Plea in Sexual Assault Cases, 6 Seattle J. for Soc. Just. 907, 908 (2008). Our criminal justice system demands that "the victim of a crime places his or her trust in the criminal justice system. How then does a victim react when he or she hears the defendant plead guilty while all the while maintaining his innocence to the crime? The sense of finality is clearly missing." State v. Garcia, 192 Wis. 2d 845, 868-69, 532 N.W.2d 111 (1995) (Wilcox, J., concurring). Victims in cases resolved by Alford pleas may suffer from a lack of finality, and as this court has stressed, "justice requires that all who are engaged in the prosecution of crimes make every effort to minimize further suffering by crime victims." Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶26, 278 Wis. 2d 216, 692 N.W.2d 623.

¶68 Alford pleas likewise can have a negative impact on defendants, particularly defendants convicted of sexual offenses. Failing to take responsibility can severely hamper a defendant's rehabilitation and render him ineligible for otherwise-available treatment options. As this court has previously reasoned, "[a]n inherent conflict arises when a charged sex offender enters an Alford plea: the offender cannot maintain innocence under the Alford plea and successfully complete the sex offender treatment program, which requires the offender to admit guilt."[1] State ex rel. Warren v. Schwarz, 219 Wis. 2d 615, 652, 579 N.W.2d 698 (1998). For these reasons, I encourage circuit court judges to proceed with caution when asked to accept an Alford plea and to accept such pleas sparingly.

¶69 Lastly, it is important to state unequivocally that crime victims who come forward and report their victimization are brave. We rely on "the civic and moral duty of victims and witnesses of crime to fully and voluntarily cooperate with law enforcement and prosecutorial agencies." Wis. Stat. § 950.01 (2017-18). Such citizen cooperation is important to "state and local law enforcement efforts and the general effectiveness and well-being of the criminal justice system of this state." Id. In this case, the young victims fulfilled their duty, holding their abuser accountable and in doing so demonstrated more strength, resiliency, and courage than most of us could ever imagine.

¶70 For the foregoing reasons, I respectfully concur.

---

[1] See Wis JI—Criminal SM-32A for more information about the detrimental effect of Alford pleas, including their impact on defendants.

¶71  I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this concurrence.