COURT OF APPEALS
DECISION
DATED AND FILED

September 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP924-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF33

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

DANIEL L. LANDIS,

    DEFENDANT-APPELLANT.

---

        APPEAL from a judgment and an order of the circuit court for Rock County: BARBARA W. MCCRORY, Judge. *Affirmed*.

        Before Graham, Nashold, and Taylor, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Daniel L. Landis appeals his judgment of conviction for second-degree recklessly endangering safety, contrary to WIS. STAT. § 941.30(2) (2021-22),[1] as well as the circuit court's order denying his postconviction motion to withdraw his guilty plea. On appeal, Landis asserts that he is entitled to withdraw his plea on two related grounds. First, he contends that the plea lacked a factual basis—according to Landis, the facts in the record failed to establish that he endangered the safety of another person. Second, Landis contends that trial counsel was ineffective for stipulating to a factual basis during the plea hearing, and for failing to move to dismiss the charge. We reject Landis's arguments and affirm.

## BACKGROUND

¶2    The following summary of facts about Landis's crime is derived from the criminal complaint. After attempting to rob a bank in downtown Janesville, Landis fled the scene on his motorcycle. Officer Grunewald, who had been dispatched to the bank, observed Landis ride away and pursued in his squad car. During the pursuit, Landis drove his motorcycle over the curb and onto the sidewalk in front of several businesses. Grunewald lost sight of Landis for a period of time, but then located Landis again at a stoplight. When Grunewald pulled his squad car in front of Landis and activated his emergency lights, Landis "immediately took off."

¶3    Grunewald continued to pursue Landis, and other officers including Officer Briggs joined in the chase. Briggs observed Landis as he failed to stop at

---

[1]   All references to the Wisconsin Statutes are to the 2021-22 version.

red lights, traveled through downtown and residential areas at speeds in excess of 50 miles per hour (twice the legal limit), and cut through a gas station and the parking lot of a hardware store at a high rate of speed. Briggs placed his squad car in Landis's path, but Landis drove his motorcycle up onto the sidewalk around the squad car, and then turned into a residential driveway and drove into the backyard of the residence. At that point, the officers were able to apprehend Landis at gunpoint.

¶4　The State ultimately charged Landis with the following crimes, all with repeater enhancers: attempted theft from a financial institution; disorderly conduct; second-degree recklessly endangering safety; attempting to flee or elude an officer; and obstructing an officer.

¶5　At the preliminary hearing, the State presented testimony from Officer Briggs. Briggs's testimony was consistent with the above-described allegations from the complaint. Briggs also testified that he observed Landis drive at speeds of 50 to 60 miles per hour and disregard two red lights, and that the chase ended when Landis's motorcycle collided with a fence in a residential backyard. According to Briggs, the chase had occurred "midday," shortly before noon; "there was a lot of traffic" on the road at that time; and the officers "obviously had to slow down for cross traffic" as they pursued Landis. The court bound Landis over for trial.

¶6　The parties then entered into a plea agreement. Pursuant to the agreement, Landis would plead guilty to the charge of second-degree recklessly endangering safety without the repeater enhancer (hereinafter, the "reckless endangerment charge"). In exchange, the State would dismiss the remaining

charges, which would be read in at sentencing. The effect of the agreement was to significantly reduce the total maximum sentence Landis faced.

¶7      Prior to the plea hearing, Landis conferred with trial counsel and signed a plea questionnaire/waiver of rights form. Attached to that form was a copy of the pattern jury instructions for the reckless endangerment charge, WIS JI—CRIMINAL 1347, which identified the two elements that the State would have been required to prove at trial: that Landis endangered the safety of another human being; and that Landis did so by criminally reckless conduct. The pattern instructions further explained that "criminally reckless conduct" means conduct that created a risk of death or great bodily harm to another person; that the risk was unreasonable and substantial; and that Landis was aware that his conduct created the unreasonable and substantial risk.

¶8      During the plea hearing, the circuit court conducted a plea colloquy and made certain inquiries. Landis stated that he had had enough time to discuss the matter with trial counsel and was entering the plea knowingly, intelligently, and voluntarily. The court reviewed the elements of the reckless endangerment charge. Landis stated that he understood the elements of the offense, and further understood that, by entering a guilty plea, he was admitting that the elements were satisfied and was giving up the right to make the State prove those elements beyond a reasonable doubt. The court turned to trial counsel, who stated that he had discussed the plea questionnaire/waiver of rights form with Landis, and that Landis was "very familiar" with the elements of reckless endangerment. Trial counsel stated that he believed that Landis's plea was knowing, intelligent, and voluntary.

¶9      The circuit court then asked Landis whether he agreed that there was a factual basis in the criminal complaint for the elements of reckless endangerment, and Landis equivocated. Specifically, Landis stated: "Maybe borderline. It would be a close call under the circumstances, which is part of why we entered into a plea agreement." The court followed up by asking whether Landis would agree that there was "some activity" alleged in the complaint that could constitute reckless endangerment, and Landis responded, "Yes. I know what you're getting at."

¶10     The circuit court then turned to trial counsel and the prosecutor, who both indicated that, in their opinions, the allegations in the complaint provided a factual basis for the charge. The court indicated that, based on its own review of the criminal complaint, it had determined that the complaint set forth a factual basis from which it could accept Landis's plea. The court further determined that Landis's plea was made "freely, voluntarily, knowingly, and intelligently," and it accepted Landis's plea and adjudicated him guilty.

¶11     Following the plea hearing, the circuit court ordered a presentence investigation (PSI). In the section for a victim's statement, the PSI author wrote the following: "Although there is not a direct victim in this case, it should be noted that the community as a whole was a victim when Mr. Landis made the decision to attempt to elude law enforcement by disobeying the speed limit, traffic signs and/or signals and driving erratically through the city of Janesville[.]"

¶12     During the sentencing hearing, counsel used the lack of any specific victim identified in the complaint to argue for a more lenient sentence. Counsel argued that, although Landis disregarded red lights and committed other infractions, there was no allegation that there was oncoming traffic, nor that any

person had to take evasive action to avoid being hit. Counsel argued that "this is not an aggravated fleeing activity because nobody but Mr. Landis [was] actually endangered during the process."

¶13    The circuit court disagreed with trial counsel's assessment of Landis's crime. It observed that Landis had been "fortunate" that no one other than himself had been hurt, and that Landis had endangered "unsuspecting people" when he disregarded traffic signals and drove up on sidewalks that were "meant for pedestrians." The court sentenced Landis to a bifurcated term of eight years, consisting of four years of initial confinement and four years of extended supervision.

¶14    Landis then filed the postconviction motion that is the subject of this appeal. As noted, the motion sought plea withdrawal, and argued that it would be a manifest injustice to allow Landis's plea to stand. According to Landis's motion, there was no factual basis for the reckless endangerment charge, and trial counsel should not have stipulated to a factual basis and should have instead moved to dismiss the charge.

¶15    The circuit court held a ***Machner*** hearing on Landis's postconviction motion, and trial counsel testified as follows.[2] During counsel's representation of Landis, they discussed the elements of the reckless endangerment charge, and specifically discussed the possibility of moving to dismiss that charge. Landis

---

[2] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A ***Machner*** hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain [counsel's] handling of the case." ***State v. Balliette***, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

may have told counsel that he did not remember seeing any drivers or pedestrians who were endangered by his conduct, and Landis may have wanted counsel to file a motion to dismiss the charge. However, counsel did not think a motion would be appropriate because, in his assessment, there was probable cause for the charge. Turning to the plea hearing, counsel stipulated that there was a factual basis for the charge based on his belief that the facts from the criminal complaint and the preliminary hearing were sufficient to establish a factual basis, and because Landis had made the decision to agree to the terms of the negotiated plea deal. "[A]s a part of that process," counsel explained, "you need to stipulate that there's a factual basis. If not, then there is no plea."

¶16 The circuit court denied Landis' postconviction motion. In so doing, the court credited trial counsel's testimony, and concluded that there was a factual basis for Landis's plea. As the court explained, the facts and the reasonable inferences that could be drawn and the complaint and the preliminary hearing testimony supported a determination that Landis "endangered the safety of another human being." The court specifically referenced the dangerous manner in which Landis drove, the time of day, and the location of the chase, and the court inferred that "cars were driving with a green light," that "[p]edestrians might have been crossing the street," and that "[p]eople [were] walking through [the] parking lots [that Landis drove through]."

¶17 The circuit court further concluded that trial counsel did not perform deficiently by declining to file a motion to dismiss the reckless endangerment charge. It concluded that counsel's "decision to not file that motion" was reasonable "under the circumstances" and "well within the normal and reasonable conduct of a criminal defense attorney," and that any motion to dismiss the charge would have failed.

¶18    Landis appeals.[3]

## DISCUSSION

¶19    A defendant seeking to withdraw a guilty plea after sentencing bears a heavy burden, and must establish by clear and convincing evidence that withdrawal of the plea is necessary to correct a manifest injustice. *State v. Nash*, 2020 WI 85, ¶¶31-32, 394 Wis. 2d 238, 951 N.W.2d 404.[4] "[O]ne type of manifest injustice is the failure of the [circuit] court to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads." *Id.*, ¶32 (citation omitted). Another type of manifest injustice occurs if the defendant was deprived of the effective assistance of counsel. *See State v. LeMere*, 2016 WI 41, ¶23, 368 Wis. 2d 624, 879 N.W.2d 580. Landis argues that he should be allowed to withdraw his guilty plea because there was no factual basis that he committed the offense and because his counsel was ineffective. We address these arguments in turn.

---

[3] Landis's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. See RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule has recently been amended, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at xl.

[4] A different standard applies for defendants who seek to withdraw their plea prior to sentencing. *See State v. Nash*, 2020 WI 85, ¶31, 394 Wis. 2d 238, 951 N.W.2d 404 (explaining that the fair and just reason standard applies pre-sentencing).

### I. Factual Basis

¶20     Before accepting a guilty plea, a circuit court must, among other things, "personally ascertain whether a factual basis exists to support the plea." *Bangert*, 131 Wis. 2d at 262; *see also* WIS. STAT. § 971.08(1)(b) (requiring the court to "make such an inquiry as satisfies it that the defendant in fact committed the crime charged."). The purpose of establishing a factual basis is to "protect a defendant" from voluntarily pleading guilty to a charge "without realizing that [the defendant's] conduct does not actually fall within the charge." *See State v. Thomas*, 2000 WI 13, ¶14, 232 Wis. 2d 714, 605 N.W.2d 836 (citations omitted).

¶21     A "factual basis for a plea may be established by reference to the allegations set forth in the criminal complaint," *State v. Sutton*, 2006 WI App 118, ¶17, 294 Wis. 2d 330, 718 N.W.2d 146, or by reference to other record sources such as witness testimony and police reports, *Thomas*, 232 Wis. 2d 714, ¶20. A factual basis exists when the allegations, if true, establish the elements of the crime charged, but the "inference of guilt need not be established beyond a reasonable doubt." *State v. Scott*, 2017 WI App 40, ¶29, 376 Wis. 2d 430, 899 N.W.2d 728. If the guilty plea is made pursuant to a plea bargain, as it was here, the circuit court "need not go to the same lengths to determine whether the facts would sustain the charge as it would where there is no negotiated plea." *Broadie v. State*, 68 Wis. 2d 420, 423-24, 228 N.W.2d 687 (1975).

¶22     As stated, Landis contends that there was no factual basis for his plea to the reckless endangerment charge. To the extent that Landis is arguing that the circuit court failed to fulfill its mandatory duty of ascertaining a factual basis for the plea, we disagree. The transcript from the plea hearing unequivocally establishes that the court considered whether there was a factual basis for the plea

and determined that there was. Although Landis equivocated, he ultimately acknowledged that there was a factual basis for the charge, and trial counsel agreed with that assessment. The court could have accepted either of these stipulations as the factual basis for the plea, *Thomas*, 232 Wis. 2d 714, ¶18, but the court went further, specifically noting that, based on its independent review of the record facts, there was a factual basis for the plea.

¶23 We conclude that the circuit court's inquiry was sufficient, particularly in this context in which Landis was pleading guilty pursuant to a negotiated plea agreement. *See Broadie*, 68 Wis. 2d at 423-24. Landis has never claimed that he misunderstood the elements of the reckless endangerment charge, and this is not a situation in which Landis might have unwittingly entered into a plea bargain "without realizing that his conduct does not actually fall within the charge." *See Thomas*, 232 Wis. 2d 714, ¶14.

¶24 To the extent that Landis is instead arguing that the circuit court's factual basis determination was clearly erroneous, we also disagree. *Nash*, 394 Wis. 2d 238, ¶28 (we will not overturn a circuit court's factual basis determination unless it is clearly erroneous). The complaint and the preliminary hearing testimony both provide factual support for a determination that Landis was making dangerous maneuvers on his motorcycle as he attempted to evade the squad cars that were pursuing him through downtown Janesville. These maneuvers included disregarding red lights, driving on pedestrian sidewalks, and cutting through commercial parking lots at a high rate of speed. According to the transcript from the preliminary hearing, there was significant midday downtown traffic, and the officers could not pursue Landis at the speed at which he was travelling due to the risk of endangering traffic. At the plea hearing stage, a circuit court is allowed to consider any "inculpatory inferences" that could be made based on the facts in the

record. *See State v. Black*, 2001 WI 31, ¶16, 242 Wis. 2d 126, 435, 624 N.W.2d 363 (2001) (citing *State v. Spears*, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988)). Although there are not any specific persons identified in the record who were endangered by Landis's conduct, the court could reasonably infer that his dangerous maneuvers endangered the safety of other persons, especially given the time of day in which the chase occurred and the downtown and residential neighborhoods through which Landis fled.

¶25 We now consider Landis's counterarguments. First, Landis suggests that it is not enough to rely on inferences about pedestrians and traffic to establish a factual basis for the reckless endangerment charge, and the State must instead be able to identify specific persons who were endangered by Landis's actions. Yet Landis fails to cite any legal authority to support that proposition, and we reject Landis's argument on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶26 Second, Landis may be suggesting that a properly instructed jury would not have found him guilty of reckless endangerment unless the State presented more detail about specific persons who were endangered by his actions. That may be so, but it does not undermine the circuit court's conclusion that there was a factual basis for Landis's plea. We will never know what evidence would have been produced at trial, nor whether a jury would have convicted Landis based on that evidence, because Landis opted to plead guilty rather than to go to trial. And even if a jury might have acquitted Landis of this charge, that does not mean that there was no factual basis to support his plea.

¶27 Finally, Landis makes a series of arguments suggesting that his driving was not that dangerous. For example, he argues that the officers were able

11

to keep up with him as he fled, which shows that he was not actually driving all that fast. He also asserts that it is unreasonable to infer that he could have hurt anyone on his motorcycle because he was driving an "older off-road motorcycle," which, he contends, "does not pose the same danger as a standard sedan or even a larger motorcycle would." These arguments are not persuasive. "A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury from the facts … even if an exculpatory inference could also be drawn[.]" *Spears*, 147 Wis. 2d at 435. Accordingly, Landis cannot undermine the circuit court's factual-basis determination merely by pointing out that some of the facts relied on could be viewed in a different light.

## II. Ineffective Assistance

¶28    We now turn to Landis's ineffective assistance of counsel claim. To prevail, Landis must prove "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant has the burden on both prongs of the *Strickland* test, and if the defendant "fails to adequately show one prong …, we need not address the [other]." *State v. Elm*, 201 Wis. 2d 452, 462, 549 N.W.2d 471 (Ct. App. 1996).

¶29    We begin with Landis's argument that his trial counsel performed deficiently at the plea hearing by stipulating that there was a factual basis for the reckless endangerment charge. We disagree. Counsel had at least two good reasons for stipulating that there was a factual basis for the charge. First, like the circuit court, counsel could reasonably determine that the facts in the record established a factual basis for the plea. Second, the plea agreement offered by the State significantly reduced Landis's potential exposure to incarceration, and

12

Landis told counsel that he wanted to accept the State's offer. We conclude that counsel was not ineffective for agreeing that there was a factual basis for the charge to which Landis pleaded.

¶30 Separately, Landis also argues that trial counsel performed deficiently by declining to move to dismiss the reckless endangerment charge.[5] As we understand it, the circuit court credited Landis's allegation that he wanted counsel to file such a motion, and further credited counsel's testimony that he declined to do so because he believed any such motion would have been unsuccessful.

¶31 It is well established that trial counsel does not perform deficiently by failing to file a motion that would have been denied. *State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16. Nor does counsel perform deficiently by failing to file a motion based on unsettled law. *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799 N.W.2d 461. Thus, to show that counsel performed deficiently, Landis has the burden to demonstrate that a motion to dismiss the reckless endangerment charge would have been meritorious.

¶32 Landis fails to satisfy that burden. In the circuit court and on appeal, Landis implies that a motion to dismiss would have succeeded because the complaint failed to identify any specific person who was endangered by his conduct. Yet, as we have discussed, Landis does not cite any legal authority to support this assertion. Thus, the law on this topic is unsettled at best, and under

---

[5] Under some circumstances, a circuit court can dismiss criminal charges if they are not supported by probable cause. *See, e.g.*, *State v. Thiel*, 183 Wis. 2d 505, 541-42, 515 N.W.2d 847 (1994).

the circumstances, we agree with the circuit court that counsel's "decision to not file that motion" was "well within the normal and reasonable conduct of a criminal defense attorney." *See id.*, ¶10 ("When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance.").

## CONCLUSION

¶33 For all these reasons, we conclude that the circuit court did not err when it denied Landis's motion to withdraw his plea.

*By the Court.—*Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.